BROWN et al. v. STUMPFF et al.

No. 5317.

Court of Civil Appeals of Texas. Texarkana.

Dec. 16, 1938.

Rehearing Denied Jan. 5, 1939.

Scott, Hall & Lindsay, of Marshall, P. F. Graves, of Houston, and J. M. Singleton, of Jefferson, for appellants.

Wynne & Wynne, Angus G. Wynne, and Henry H. Harbour, all of Longview, and Olga H. Lapin, of Kilgore, for appellees.

HALL, Justice.

This is a suit in trespass to try title brought by appellees against appellants and involves the 7/8 leasehold interest in and to fifty acres of land located in Marion County. Appellant Melba Madeline Scudday, through an attorney, filed a plea in abatement in which it was alleged that at the time of the commencement of this suit she was an unmarried minor fifteen years of age. She alleged, further, that on the date this suit was filed she had a legally qualified guardian of her estate, to-wit, Mrs. Ida Pruitt, and that on the date her plea in abatement was filed she had a legally qualified guardian of her estate, to-wit, R. L. Scudday, and "that each of said guardians in their respective capacity as guardian is a necessary party to this suit." Appellant Mrs. Ida Pruitt also filed a plea in abatement by and through an attorney, alleging that at the time of the commencement of this suit she was and still is a person of unsound mind having theretofore been adjudged insane by the County Court of Marion County, Texas. She alleged, further, that on the date of the filing of her plea in abatement, and for sometime before, she had a legally qualified guardian of her estate, to-wit, R. L. Scudday, who was in his representative capacity as guardian a necessary party to this suit. It was also alleged in both said pleas in abatement that the guardian as such had not been served with citation, and in the capacity of guardian he was not a party to the suit. The guardian, R. L. Scudday, in his individual capacity was a party to this suit and was properly served with citation, as well as all other defendants (appellants) including the minor and the non compos mentis. The two pleas in abatement were overruled by the trial court and B. R. Lindsay, an attorney of the law firm of Scott, Hall & Lindsay of Marshall, Texas, who was actively representing the other defendants, and whose law firm had theretofore made application in behalf of the minor and Ida Pruitt, non compos mentis, for the appointment of a guardian for each, was appointed guardian ad litem by the court to represent these two wards in this case. As guardian ad litem, B. R. Lindsay filed answers for each of them. All defendants, including the minor and the non compos mentis, answered by general denial and plea of not guilty. Trial was to the court without a jury and resulted in judgment for appellees, plaintiffs below, for title and possession of the 7/8 mineral interest in and to the land in controversy.

By several assignments of error appellants complain of the action of the court below in refusing to require appellees to make the guardian of the estate of the minor and non compos mentis in his representative capacity a party defendant in this case in compliance with Art. 4164, R.C.S. As already pointed out, the plea in abatement filed on behalf of the minor, Melba Madeline Scudday, set out that she had two guardians of her estate, both of

whom, it was contended in said plea, should be cited and made parties to this suit in their representative capacity. This was the plea in abatement on behalf of the minor presented to the trial court. There is nothing in this plea that would indicate that R. L. Scudday, the last guardian, had replaced Mrs. Ida Pruitt, the first guardian. On the date of the filing of this plea in abatement, which was the date the trial began in the court below, it was alleged that the minor had two guardians of her estate. There was nothing in said plea directing the attention of the trial court to the guardian, which of the two, was the legal one. The question then arises, Which of the named guardians would the court require to be served with citation as the legal guardian for the minor? Certainly the court would not be required or permitted to have both guardians cited and made parties defendant in their representative capacity. The trial court knew that the minor could have but one legal guardian of her estate. Art. 4124, R.C.S. Neither of the guardians complained of the failure of appellees to make them parties to this suit in their representative capacity. And as said before, both guardians (Scudday and Pruitt) were parties to this suit in their individual capacity. So in this situation we think the trial court was correct in overruling this plea in abatement and properly exercised his discretion in appointing a guardian ad litem of his own choice to represent the interest of the minor. R.C.S. Art. 2159.

■ With regard to the plea in abatement filed on behalf of Ida Pruitt, non compos mentis, it appears from this record that R. L. Scudday was by the county court appointed guardian of her estate on a date after the filing of this suit and before the trial thereof in the court below. R. L. Scudday was required by order of the county judge to take the oath as guardian and make bond in the sum of $500. The record discloses that Scudday took the oath and attempted to make the bond. The bond attempted to be made was regular in all respects, except the amount thereof which was left blank. That portion of the bond illustrative of the situation is: "That we, R. L. Scudday, as principal, and H. C. Brown and J. M. Singleton, as sureties, are held and firmly bound under Joe McCasland, County Judge of the County of Marion, and his successors in office, in the sum of $————." Article 4125, R.C.S., required the court's order appointing a guardian to be entered upon the minutes of the court, and among other things, said order shall specify "the amount of the bond required of such guardian," and "shall direct the clerk to issue letters of guardianship to the person appointed *when such person has qualified according to law.*" Article 4133, R.C.S., is, "When a person appointed guardian has qualified as such, by taking the oath and *giving the bond required by law*" the clerk shall issue to said person letters of guardianship. (Italics ours.) Article 4141, R.C.S., provides that a guardian of the estate of a ward shall enter into a bond in double the estimated value of the personal property belonging to such estate, to be approved by the county judge and payable to him and conditioned that said guardian will faithfully discharge his duties as such guardian according to law. This statute further provides: "It shall be the duty of such county judge to annually examine into the condition of the estate of the ward and the solvency of such guardian's bond, and to require such guardian at any time it may appear that such bond is not ample security to protect such estate and the interests of his ward, to execute another bond in accordance with the law. * * *" We conclude, then, from the provisions of our statutes cited above that among the necessary steps to be taken by a person seeking to become the guardian of the estate of a ward is the entering into a bond in the amount fixed by the county judge. The bond entered into by the guardian, as shown above, wherein the amount fixed by the county judge was left blank, in our opinion, amounted to no bond. No action at law could be based upon it. Sacra v. Hudson, 59 Tex. 207; State v. Vinson, 5 Tex.Civ.App. 315, 23 S.W. 807, writ ref. "A person can not defend as general guardian where he has not been legally appointed or qualified as such." 28 Cor. Jur., p. 1257. R. L. Scudday had not qualified as guardian under the provisions of our statutes requiring him to enter into a bond in an amount fixed by the county judge, and to that extent, at least, he was not the legal guardian of the estate of Ida Pruitt. Stephens v. Hewett, 22 Tex. Civ.App. 303, 54 S.W. 301. In our opinion, the trial court committed no error in overruling this plea in abatement and in appointing a guardian ad litem of his choice under provisions of Article 2159.

There is an additional reason, we think, for approving the action of the trial court in overruling these pleas in abatement. There is no contention in this record to the effect that these wards' rights were not safeguarded by the guardian ad litem. It appears from the record that R. L. Scudday, the person designated in the plea in abatement as guardian, was the brother of these wards and himself a defendant in this suit. His rights and interests in the land in controversy was the same as theirs. Any fact or circumstance which would have benefited him as guardian would likewise have benefited him as an individual. There is no intimation in the record that the minor or the non compos mentis had any defense to this cause of action not common to all defendants. The guardian ad litem appointed by the court to represent these two wards was a member of the law firm representing R. L. Scudday and the other defendants in this case. There is nothing to indicate that R. L. Scudday, had he been cited and answered as guardian, would have employed other and different attorneys to represent him in that capacity. So it is clear to us that the rights of these wards of the court have been amply protected under the direct supervision of the trial court. These assignments are overruled.

Next we shall discuss the other assignments of appellants attacking the action of the trial court in holding that appellees were innocent purchasers for value without notice of the equitable title of appellants to the 7/8 mineral interest here involved. Appellees hold and claim under an oil and gas lease executed by T. H. (Harper) Scudday dated November 14, 1933, conveying 7/8 mineral interests in and to the fifty acres of land in Marion County. Appellants other than H. G. Brown were children of T. H. (Harper) Scudday and his deceased wife, and are claiming as heirs of their deceased mother a 1/2 undivided interest in the 7/8 mineral interest held by appellees. Mrs. T. H. (Harper) Scudday died May 17, 1930. On November 16, 1923, while T. H. (Harper) Scudday was married to the mother of these appellants, other than Brown, the land covered by the oil and gas lease here in controversy was conveyed to T. H. (Harper) Scudday by his mother, Mrs. M. J. Scudday. That portion of said deed bearing on the question of notice of the appellants' interest in said land is:

"The State of Texas, County of Marion.
"Know All Men by These Presents:

"That I, M. J. Scuddy, a widow, of the County of Marion, State of Texas, for and in consideration of One ($1.00) Dollar to me paid by Harper Scuddy and the further consideration of the love and affection I have for my son, Harper Scuddy, and for the further consideration of the kindness and tender care, maintenance and support he has rendered to me for the past few years and the further fact that he had agreed to continue to support and maintain me during the remainder of my natural life and I am to be permitted to live on said premises as long as I may live and in the home of the said Harper Scuddy and to be provided with all necessary, maintenance and support necessary for my comfortable living, have Granted, Sold and Conveyed, and by these presents do Grant, Sell and Convey unto the said Harper Scuddy * * *."

On November 15, 1933, T. H. (Harper) Scudday executed and delivered to appellees an oil and gas lease covering the full 7/8 mineral interest in and under the fifty-acre tract of land described in the deed from Mrs. M. J. Scudday to him. In this lease T. H. Scudday was designated as a widower. The lease also contains provisions obligating appellees to furnish gas to Scudday in his principal dwelling house for heat and lights, to refrain from drilling an oil or gas well nearer than 200 feet "from the house or barn now on said premises;" and the further provision: "If said lessor owns a less interest in the above described land than the entire and undivided fee simple estate or no interest therein, then the royalties or rentals herein provided for shall be paid the said lessor only in proportion which lessors interest, if any, bears to the whole and undivided fee." It is contended by appellants that these provisions in the lease and the designation of T. H. (Harper) Scudday as a "widower" therein, together with the recitation that part of the consideration in the deed from Mrs. M. J. Scudday to T. H. (Harper) Scudday was: "* * * that he (T. H. (Harper) Scudday) has agreed to continue to support and maintain me during the remainder of my natural life, and I am to be permitted to live on said premises as long as I may live and in the home of the said Harper (T. H.) Scudday and to be provided with all necessary maintenance and support neces-

sary for my comfortable living," were sufficient as a matter of law to constitute constructive notice to appellees of the equitable title to a 1/2 undivided interest in the property in controversy. Under the settled law of this state the legal title to the land covered by the oil and gas lease to appellees was in T. H. (Harper) Scudday and the title of Mrs. T. H. Scudday, his wife, during her lifetime, and after her death that of her children, was an equitable one. Mitchell v. Schofield, 106 Tex. 512, 171 S.W. 1121. The oil and gas lease from T. H. (Harper) Scudday, the owner of the legal title, to appellees, if purchased in good faith for a valuable consideration without notice, either actual or constructive, of the equitable title of appellants, would convey to them the full 7/8 mineral interest in and to the entire tract of land. The trial court found that appellants purchased in good faith, paid a valuable consideration for the oil and gas lease in controversy here, and that they had no notice, either actual or constructive, of the equitable title of appellants. We have concluded that the judgment of the court below is correct in this regard and it will not be disturbed. The burden rested with appellants to prove that appellees were not purchasers of this mineral interest in good faith for value without notice. Strong v. Strong, Tex.Civ.App., 66 S.W.2d 751, affirmed by Supreme Court, 128 Tex. 470, 98 S.W.2d 346, 109 A.L.R. 739. There is no contention here that appellees had actual notice of appellants' equitable title, or that the consideration paid by them was not a valuable one. The sole contention being that the recitations in the deed from Mrs. M. J. Scudday to T. H. (Harper) Scudday and in the oil and gas lease to T. H. (Harper) Scudday to appellees, set out above, were sufficient in law to charge appellees with notice of the equitable title held by appellants, or were such as would excite inquiry which if pursued would lead to knowledge of appellants' equitable interest. The designation in the oil and gas lease of T. H. (Harper) Scudday as a "widower" would indicate that he had theretofore been married and that his wife was dead. And the recitals in the deed from Mrs. M. J. Scudday to T. H. (Harper) Scudday, her son, would indicate nothing more or less than that T. H. (Harper) Scudday had a home on some part of the land covered by the deed—which home, in point of fact, was shown by the evidence not to be on any part of the land covered by the oil and gas lease here in controversy but on a five-acre tract which lay adjacent to and immediately East of the premises here in controversy—and that as part of the consideration for the two tracts of land covered by said deed he would take his mother to his home and care for her the rest of her life. None of these recitals either separately or taken together would indicate that T. H. (Harper) Scudday had a wife in 1923 when his mother conveyed to him the land here in controversy. We think the following authorities sustain our conclusion in this matter: Gilmer's Estate v. Veatch, 102 Tex. 384, 117 S.W. 430; Griggs v. Houston Oil Co., Tex.Com.App., 213 S.W. 261; McBride v. Moore, Tex.Civ.App., 37 S.W. 450; Clayborn v. Gambill, Tex.Civ.App., 87 S.W.2d 508, writ ref.; Strong v. Strong, supra; Moore v. Humble Oil & Refining Co., Tex.Civ.App., 85 S.W.2d 943, writ dismissed; Turner v. California Oil Co., 5 Cir., 54 F.2d 552.

We have examined all other assignments brought forward on this appeal and they are respectfully overruled.

Judgment of the trial court is affirmed.