In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-09-00016-CV


______________________________




IN THE MATTER OF THE MARRIAGE OF


WINFRED MARBUT AND CHARLOTTE MARBUT


AND IN THE INTEREST OF M.M., A CHILD







 


On Appeal from the County Court at Law


 Bowie County, Texas


Trial Court No. 07-D-1537-CCL




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION


 Charlotte Marbut, appellant, filed her notice of appeal January 20, 2009. 

 Marbut has not filed a docketing statement with this Court, (1) paid a filing fee, or made any
claim of indigency. There is nothing in the record to indicate Marbut has made efforts to have either
the  clerk's  record  or  reporter's  record  filed  with  this  Court,  and  she  has  not  filed  a  brief. 
On March 23, 2009, we contacted Marbut by letter, giving her an opportunity to cure the various
defects, and warning her that, if we did not receive an adequate response within ten days, this appeal
would be subject to dismissal for want of prosecution. See Tex. R. App. P. 42.3(b), (c). 

 We have received no communication from Marbut. Pursuant to Rule 42.3(b) of the Texas
Rules of Appellate Procedure, we dismiss this appeal for want of prosecution. See Tex. R. App. P.
42.3(b).



 


 Josh R. Morriss, III

 Chief Justice


Date Submitted: April 16, 2009

Date Decided: April 17, 2009


1. See Tex. R. App. P. 32.


equired by Probate Code § 761; (2) that the trial court erred in not reinstating him when
requested pursuant to Probate Code § 762; and (3) that counsel is entitled to attorney's fees from the
estate for this appeal. See Tex. Prob. Code Ann. §§ 761, 762 (Vernon Supp. 2006). 

 Appellees (Tommie and Jeremy) raise a novel counter-issue: that Donald was not removed
pursuant to Probate Code § 761, but in the court's reformation of an earlier voidable appointment to
comply with Probate Code § 690, which prohibits most coguardians. See Tex. Prob. Code Ann.
§ 690 (Vernon 2003). They also urge that the removal was for grounds which are permitted pursuant
to Probate Code § 761. See Tex. Prob. Code Ann. § 761.

I. FACTUAL AND PROCEDURAL BACKGROUND

 Jeremy became incapacitated from a closed head trauma in a car versus train accident in
2000. Jeremy's mother was incarcerated and he was estranged from his father, so Donald and
Tommie, Jeremy's grandparents (who were married to each other), applied to become and did
become his coguardians in 2003. On Donald's initiative and apparently against Tommie's wishes,
a suit was instituted against the railroad company whose train had collided with Jeremy's vehicle;
in 2005 a negotiated settlement of the lawsuit was reached and Jeremy's assets promptly soared from
being about $350.00 before the settlement to over $2,000,000.00 after.

 Shortly after the settlement was reached, the court apparently became dissatisfied with
Donald serving as guardian; the genesis of this dissatisfaction is not revealed from the record. 
Acting on this dissatisfaction, the court acted sua sponte, filing a notice for Donald to appear and
show cause why he should not be removed as guardian; this show cause notice intimated that
Donald's continued role as a coguardian did not appear to be in Jeremy's best interest.

 a. Hearing Testimony

 Donald, Tommie, and Jeremy all appeared at the show cause hearing. The court opened the
hearing by stating: "I have issued a Show Cause Order because it doesn't appear that the guardian
has the best interest of the Ward at heart. I, somewhat, have a problem with dual guardianship
because there is no one person to answer to." 

 Four witnesses testified: Tommie, Donald, Jeremy, and Jeremy's father, W. T. Finley. 
Jeremy testified that he believed that he was being looked after well. W. T., a Utah resident at the
time of the hearing, testified that it appeared to him that Jeremy's needs were being attended to well. 
Donald's and Tommie's testimony indicated some degree of conflict between Tommie and Donald
regarding the expenditure of Jeremy's money. Tommie testified that she believed she was more
conservative with spending than was Donald. Nonetheless, the interested parties agreed that
although the two guardians had experienced some disagreements, for the most part Jeremy was well
looked after and there was no neglect or misconduct. Tommie did opine that she believed that it
would be in Jeremy's interest to have only one guardian, not two. 

 Much of the hearing focused on Donald's purchase of a manufactured home for Jeremy to
use as a residence. Within days after the lawsuit with the railroad company had been settled, Donald
had signed an earnest money contract to purchase a manufactured home for Jeremy. Apparently
(although the evidence about this purchase is sketchy), Donald signed the contract in his name, not
in his capacity as coguardian for Jeremy. All of this took place prior to the court having ordered that
Jeremy's funds be placed in a bank under a safe-keeping agreement. The seller of the manufactured
home demanded performance under the contract before Donald was able to obtain approval from the
court for the expenditure for its purchase, so Donald mortgaged "everything I had" (including
Donald's personal 401k account) to effect the purchase of the manufactured home, paying for the
entire purchase price with his own funds. When the title to the manufactured home was issued by
the seller, the title was placed in Donald's name (not Jeremy's). But at the hearing, Donald stated that
he was not claiming the home as his own but, rather, that it was Jeremy's, even though the title had
not been transferred to Jeremy. Subsequent to the purchase, the court approved about $60,000.00
for the purchase price of the manufactured home; Donald was reimbursed for all of his expenditures
except about $3,000.00 in closing costs, for which he also expected to be reimbursed. Additionally,
the guardianship had made improvements to the manufactured home and its surroundings, which
cost about $50,000.00; Donald was expecting to be reimbursed for some of the expenses which had
been made but for which he had neither requested nor received prior authorization from the court
to make. Tommie was owed no reimbursement for out-of-pocket expenses for Jeremy's benefit. 

 b. Removal of Donald as Guardian

 At the close of the very brief hearing, the court, in open court, removed Donald as
coguardian, stating:

 Okay. Like I said before Court actually started, I don't like the dual guardianship,
anyway, because I don't have one person to answer to me. So, it is my judgment that
Mr. Finley be taken off the guardianship, and sole guardianship be appointed to
Ms. Finley, and the bond be raised from one hundred dollars to one hundred
thousand.


The court later entered a written order removing Donald as guardian of Jeremy's person and estate
for the solely stated reason that "it would be in the best interest of the Ward to only have one
Guardian." Donald made a timely request for the entry of findings of fact and conclusions of law
and, despite Donald's also timely notice that the findings of fact and conclusions of law were past
due, none were filed by the trial court. 

II. REMOVAL OF GUARDIAN

 a. Standard of Review

 We review a court's removal of a guardian for abuse of discretion. See In re Guardianship
of Erickson, 208 S.W.3d 737, 743 (Tex. App.--Texarkana 2006, no pet.); State ex rel. Tex. Dep't
of Mental Health & Mental Retardation v. Ellison, 914 S.W.2d 679, 682 (Tex. App.--Austin 1996,
no writ). The test for abuse of discretion is not whether, in the opinion of the reviewing court, the
facts present an appropriate case for the trial court's action; rather, it is a question of whether the
court acted without reference to any guiding rules or principles, and the mere fact that a trial court
may decide a matter within its discretionary authority differently than an appellate judge does not
demonstrate such an abuse. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238 (Tex. 1985). 
A trial court cannot abuse its discretion if it reaches the right result, even for the wrong reasons. 
Luxenberg v. Marshall, 835 S.W.2d 136, 141-42 (Tex. App.--Dallas 1992, no writ).

 Although Donald refers to the sufficiency of the evidence in support of removal, "legal and
factual sufficiency are not independent, reversible grounds of error in guardianship proceedings but
are, instead, factors to consider in assessing whether the trial court abused its discretion." Erickson,
208 S.W.3d at 743; see also Robinson v. Willingham, No. 03-05-00221-CV, 2006 Tex. App. LEXIS
2788, at *10 (Tex. App.--Austin Apr. 6, 2006, no pet.) (mem. op.) (citing Trimble v. Tex. Dep't of
Protective & Regulatory Serv., 981 S.W.2d 211, 215 (Tex. App.--Houston [14th Dist.] 1998, no
pet.)). 

 b. Removal Pursuant to Statutory Authority

 It has been long established that a guardian appointed under Texas guardianship statutes may
be "removed only for some cause declared by the statute to be a sufficient cause." Kahn v. Israelson,
62 Tex. 221, 225 (1884); see also Tex. Prob. Code Ann. § 759(f) (Vernon 2003), § 761. The
"courts have no power to engraft upon" the statute governing removal of guardians a cause for
removal not named in it. Kahn, 62 Tex. at 226. There are several provisions and subsections within
the Probate Code guardianship chapter that govern, in varying capacities, removal of a guardian. (1) 
The primary statutory authorized bases for removal of a guardian are contained in Probate Code
§ 761. See Tex. Prob. Code Ann. § 761 (discussed in Section II(d), below). 

 Generally, the party seeking the guardian's removal has the burden to prove sufficient
grounds. Ellison, 914 S.W.2d at 683; Youngs v. Choice, 868 S.W.2d 850, 853 (Tex. App.--Houston
[14th Dist.] 1993, writ denied). Although here the court itself sought Donald's removal, Donald, as
the subject of a removal notice, may prevail "if he can establish as a matter of law that he, as
guardian, has not violated any of the provisions" governing removal. See Youngs, 868 S.W.2d at
853. Determination of this issue is made more difficult on this appeal because the court's cited
grounds for removal do not comply with the language of any statutorily-authorized ground (2) and
because the court failed to file the properly requested findings of fact and conclusions of law
allowing the parties and a reviewing court to discern whether appropriate statutory grounds of
removal existed. 

 c. Removal of a Joint Guardian Under Probate Code § 690 

 Before dealing with Donald's contention that he was improperly removed under Probate
Code § 761, we will address Appellees' contention that the court properly removed Donald pursuant
to Probate Code § 690. Section 690 provides:

 Only one person may be appointed as guardian of the person or estate, but one person
may be appointed guardian of the person and another of the estate, if it is in the best
interest of the ward. Nothing in this section prohibits the joint appointment of a
husband and wife, of joint managing conservators, or of coguardians appointed under
the laws of a jurisdiction other than this state.

Tex. Prob. Code Ann. § 690. 

 Several cases seem to support the proposition that a court would be entitled to remove a joint
guardian appointed in contravention of Probate Code § 690. See, e.g., In re Whitcomb, 35 S.W.3d
220 (Tex. App.--Corpus Christi 2000, no pet.); cf. Haas v. Dodson, 589 S.W.2d 193 (Tex.
App.--Waco 1979, no writ) (an order appointing two coguardians of the estate who do not fall
within the exceptions to the general rule of having a single guardian is void); St. Paul Sanitarium
v. Crim, 84 S.W. 1114 (Tex. Civ. App. 1905, writ ref'd) (actions of subsequently appointed guardian
void when first-appointed guardian never removed). As a preliminary matter, though, we must
determine if Probate Code § 690 prohibited the appointment of Donald as a joint guardian.

 Appellees novelly contend that Probate Code § 690 prohibits all joint guardians not
"appointed under the laws of a jurisdiction other than this state." That is, Appellees contend that
Probate Code § 690's phrase "appointed under the laws of a jurisdiction other than this state"
modifies each of the three preceding exceptions: "a husband and wife," "joint managing
conservators," and "coguardians." Appellees' position is that Donald and Tommie, although husband
and wife, were not appointed under the laws of another jurisdiction and so did not fall within one
of the exceptions to the "only one guardian" rule. Donald, on the other hand, asserts that the phrase
"appointed under the laws of a jurisdiction other than this state" limits only the last of the three
categorical exceptions--i.e., that the statute allows more than one guardian when those guardians
are either (1) coguardians appointed under the laws of a jurisdiction other than this state; or (2) joint
managing conservators; or (3) any husband and wife. 

 We are unaware of any cases specifically interpreting this aspect of Probate Code § 690. 
Appellees' cited cases are not on point; all involve the appointment of coguardians who do not fall
under any of the Probate Code § 690 exceptions and none of whom were married to each other. See
Whitcomb, 35 S.W.3d 220 (two daughters of ward); Haas, 589 S.W.2d 193 (husband of ward and
second person of undetermined relation); (3) see also Brown v. Stumpff, 123 S.W.2d 806 (Tex. Civ.
App.--Texarkana 1939, no writ); McAdams v. Wilson, 164 S.W. 59, 62 (Tex. Civ. App.--Amarillo
1914, writ ref'd) (wards' grandfather and uncle).

 When interpreting statutes, 


 we try to give effect to legislative intent. "Legislative intent remains the polestar of
statutory construction." However, it is cardinal law in Texas that a court construes
a statute, "first, by looking to the plain and common meaning of the statute's words." 
If the meaning of the statutory language is unambiguous, we adopt, with few
exceptions, the interpretation supported by the plain meaning of the provision's words
and terms. Further, if a statute is unambiguous, rules of construction or other
extrinsic aids cannot be used to create ambiguity. 


Fitzgerald v. Advanced Spine Fixation Sys., Inc., 996 S.W.2d 864, 865-66 (Tex. 1999) (footnotes
omitted). The truest guide to legislative intent is, of course, the plain, simple, and unambiguous
language of the statute. City of San Antonio v. Tex. Attorney Gen., 851 S.W.2d 946, 951 (Tex.
App.--Austin 1993, writ denied). In starting our analysis with the Legislature's words, "we may
consider textual aids to construction for the insight they may shed on how the Legislature intended
that their words be interpreted. In doing so, we look at the entire act, and not a single section in
isolation." Fitzgerald, 996 S.W.2d at 866 (footnotes omitted). We approach the statutory text
according to the rule that "[w]ords and phrases shall be read in context and construed according to
the rules of grammar and common usage." Tex. Gov't Code Ann. § 311.011(a) (Vernon 2005).

 The last sentence of Probate Code § 690 appears grammatically ambiguous; the phrase
"appointed under the laws of a jurisdiction other than this state" could modify each entry in the series
or only the last entry in the series. Though the closest analysis of a similarly ill-informed
grammatical construction comes from the criminal law, the Texas Court of Criminal Appeals'
analysis is illuminating. See Ludwig v. State, 931 S.W.2d 239, 241-42 (Tex. Crim. App. 1996). In
Ludwig, the court construed the old Texas Rule of Criminal Evidence 504's suspension of the marital
privilege when "an accused is charged with a crime against the person of any minor child or any
member of the household of either spouse." Id. at 240 n.4; see also Tex. R. Crim. Evid.
504(1)(d)(2). The question was whether the phrase "of either spouse" modified and limited both
"any minor child" and "any member of the household" or only the latter. (4) Ludwig, 931 S.W.2d at
241-42. The court noted that, generally, the "presence of a comma separating a modifying clause
in a statute from the clause immediately preceding is an indication that the modifying clause was
intended to modify all the preceding clauses and not only the last antecedent one." Id. (quoting 82
C.J.S. Statutes § 334 (1953)). Finding no comma, the court acknowledged that the statute was
ambiguous. Id. at 242.

 The statute in Ludwig included no commas or punctuation of any kind. Id. The court noted
that, had the statute included a comma after the first exception (i.e., "any minor child, or . . . ."), the
exception could stand alone without modification by the later qualifying phrase "of either spouse." 
Id. at 241-42. In fact, the court noted that in a similar statute reading "crime committed against the
person's spouse, a minor child, or a member of the household of either spouse," the "use of
appropriate punctuation," i.e., a comma after each clause, clarified and limited the qualifying phrase
"of either spouse" to only the last exception in the list so that it did not modify the earlier exceptions.
Id. at 244. This follows the grammatical convention that, generally, "a comma should precede a
conjunction connecting two coordinate clauses or phrases in a statute in order to prevent the
following qualifying phrases from modifying the clause preceding the conjunction." Id. at 242
(quoting 82 C.J.S. Statutes § 334). Unlike the statute addressed in Ludwig, the statute at issue here
does contain internal punctuation to indicate the intent; the conjunction "or" connecting the last
exception phrase to the former exception phrases is preceded by a comma. As such, the qualifying
phrase after both the conjunction and the comma, and subsequent to the final exception, is generally
prevented from modifying the earlier exceptions.

 The importance of the comma comes from the "last antecedent doctrine," which can assist
us in ascertaining the legislative intent. See 82 C.J.S. Statutes § 333 (1999).

 Under the last antecedent doctrine, where no contrary intention appears, relative and
qualifying words, phrases, and clauses are to be applied to the immediately preceding
words or phrase. Such words, phrases, and clauses are not to be construed as
extending to or modifying others which are more remote. . . . 

 

Id. (footnotes omitted). On the other hand, when "several words are followed by a clause which is
as much applicable to the first and other words as to the last, the clause should be read as applicable
to all." Id. (emphasis added) (footnote omitted). The phrase here is arguably not equally as
applicable to the first entry as to the last. If the phrase "appointed under the laws of a jurisdiction
other than this state" applies to each listed exception--husband and wife, joint managing
conservators, and coguardians--it necessarily limits the exception to those potential Texas guardians
who had already been "appointed" elsewhere. This begs the question, appointed as what?

 If the phrase "appointed under the laws of a jurisdiction other than this state" means to
qualify two or more people already appointed elsewhere as guardians, then the phrase "a husband
and wife" is rendered redundant with the later phrase "coguardians." If the phrase "appointed under
the laws of a jurisdiction other than this state" means to qualify two or more people already
appointed elsewhere as joint managing conservators, then the phrase "a husband and wife" is
rendered redundant with the second named exception. Certainly, a husband and wife are not
elsewhere appointed as a husband and wife; husbands and wives acquire that relationship through
marriage, not appointment. Such a reading is absurd. We can imagine no reading which would be
consistent with Appellees' construction that would not have similarly meaningless or absurd results. 
As we are to presume that the entire statute is intended to be effective, we should not construe a
statute in such a way as to render the inclusion of one part of it meaningless. See Tex. Gov't Code
Ann. § 311.021(2) (Vernon 2005). Similarly, we are not to construe a statute in such an absurd way
as to flout the presumption that the Legislature enacted the statute intending a just and reasonable
result. See Tex. Gov't Code Ann. § 311.021(3) (Vernon 2005); see also Sharp v. House of Lloyd,
Inc., 815 S.W.2d 245, 249 (Tex. 1991). 

 Whether we find the statute ambiguous or unambiguous, the Texas Government Code
provides that, in construing a statute, we may consider, among other matters, "the (1) object sought
to be attained; (2) circumstances under which the statute was enacted; (3) legislative history;
(4) common law or former statutory provisions, including laws on the same or similar subjects;
(5) consequences of a particular construction; (6) administrative construction of the statute; and
(7) title (caption), preamble, and emergency provision." Tex. Gov't Code Ann. § 311.023 (Vernon
2005). 

 Of these matters, the legislative and statutory history are particularly instructive. The Acts
of 1870 required that "Only one guardian can be appointed . . . ." Act of Aug. 15, 1870, 12th Leg.,
C.S., ch. 81, § 341 (1870), reprinted in 6 H.P.N. Gammel, The Laws of Texas 1822-1897, at 362,
available at http://texashistory.unt.edu/permalink/meta-pth-6734:368. By 1876, the statutory
prohibition against joint guardians provided one unlimited exception: a husband and wife as joint
guardians. See Act of Aug. 18, 1876, 15th Leg., C.S., ch. 112, § 36 (1876), reprinted in 8 H.P.N.
Gammel, The Laws of Texas 1822-1897, at 1014, available at
http://texashistory.unt.edu/permalink/meta-pth-6731:1015 ("Only one guardian can be appointed . . . 
provided, nothing in this section shall be held to prohibit the joint appointment of husband and
wife."). This language remained largely unchanged through 1955. 

 The 1956 probate codification added a second exception. It read: "Only one person can be
appointed as guardian . . . but nothing herein shall be held to prohibit the joint appointment of a
husband and wife, or of co-guardians duly appointed under the laws of another state, territory or
country, or of the District of Columbia." Acts 1955, 54th Leg., p. 88, ch. 55 (eff. Jan. 1, 1956),
repealed by Act of May 30, 1993, 73rd Leg., R.S., ch. 957, § 75, 1993 Tex. Gen. Laws 4081, 4182. 
The punctuation of the 1956 version--exception, comma, conjunction, exception, modifying
phrase--follows the last antecedent doctrine convention. At this point, "husband and wife" is not
modified by "duly appointed under the laws of another state, territory or country, or of the District
of Columbia." The 1993 probate codification leaves the punctuation (and construction) largely
unchanged. See Act of May 30, 1993, 73rd Leg., R.S., ch. 957, § 1, 1993 Tex. Gen. Laws 4081,
4104 (eff. Sept. 1, 1993) (amended 1995) ("Only one person may be appointed as guardian . . . . 
Nothing in this section prohibits the joint appointment of a husband and wife, or of coguardians
appointed under the laws of a jurisdiction other than this state."). 

 The present statute was amended in 1995 to add the third exception. See Act of May 27,
1995, 74th Leg., R.S., ch. 1039, § 36, 1995 Tex. Gen. Laws 5145, 5161 (eff. Sept. 1, 1995). The
Senate's bill analysis from the 1995 amendment indicates an intent to make a "nonsubstantive
change" by adding joint managing conservators to the list of acceptable joint guardians. Sen.
Jurisprudence Comm., Bill Analysis, Tex. H.B. 2029, 74th Leg., R.S. (1995). Similarly, both the
House's and Senate's bill analyses indicate that the 1995 changes were "technical corrections" so as
to better effectuate the 1993 Legislature's intent. Id.; House Civ. Prac. Comm., Tex. H.B. 2029, 74th
Leg., R.S. (1995). This legislative and statutory history shows a legislative intent to provide three
separate exceptions, the first two of which are general ones and the last of which is a limited one.

 This reading seems consistent with the object of the statute of preventing the splitting of the
ward's estate or person between two remote and separate guardianships. See, e.g., Haas, 589 S.W.2d
193 (cannot split guardianship of estates located in Dallas and Tarrant Counties); McAdams, 164
S.W. at 62 (cannot have separate guardianships over different properties).

 Finally, we also note the consequences of interpreting the statute so that "appointed under
the laws of a jurisdiction other than this state" applies to the "husband and wife" exception. A
construction that would prevent courts from any initial appointment (without an earlier appointment
in another jurisdiction) of spouses as joint guardians of minors or other incapacitated persons would
represent a radical departure from over 100 years of guardianship law in this state. See, e.g., Pipkin
v. Turner, 277 S.W. 221 (Tex. Civ. App.--San Antonio 1925, no writ) (husband and wife joint
guardians approved); Potts v. Terry, 28 S.W. 122, 124 (Tex. Civ. App. 1894, no writ) ("Our laws
forbid the appointment of two persons as guardians of minor's estate, except where they are husband
and wife."); accord Whitlow v. Mims, 549 S.W.2d 45 (Tex. Civ. App.--Fort Worth 1977, no writ)
(married grandparents as joint managing conservators). Such a departure seems ill-advised when
considering the Legislature expressed its intent to merely make a "technical correction" in adding
the phrase (with comma) "of joint managing conservators," in the 1995 amendment. See House Civ.
Prac. Comm., Tex. H.B. 2029, 74th Leg., R.S. (1995).

 Reading the Legislature's words in the context of the entire statute, and mindful of the
statutory and legislative history, we find that the phrase "appointed under the laws of a jurisdiction
other than this state" correctly and unambiguously modifies only the last exception in the series. See
Tex. Gov't Code Ann. § 311.011 (Vernon 2005). A husband and wife may therefore be joint
guardians of a ward regardless of the spouse's recognition, or lack thereof, by another jurisdiction. 
Appellees' approach, though novel, would also appear nonsensical when viewed from the overall
scheme. Probate Code § 690 is not, therefore, a proper ground of removal of an otherwise properly
appointed husband or wife as a joint guardian.

 d. Removal under Section 761 and Other Probate Code Authority

 Probate Code § 761 provides "strictly limited grounds for removal of permanent guardians." 
Erickson, 208 S.W.3d at 745. Section 761 allows the court to remove a guardian for eight different
causes without prior notice to the guardian, see Tex. Prob. Code Ann. § 761(a), and ten causes after
having provided the guardian prior notice. See Tex. Prob. Code Ann. § 761(c). Since Donald was
removed after a hearing conducted pursuant to a show cause order as to why he should not be
removed, the Section 761(c) grounds for removal apply. See id. 

 Section 761(c) provides for removal--either on the court's own motion or the motion of any
interested person--after notice to the guardian when:

 (1) sufficient grounds appear to support belief that the guardian has
misapplied, embezzled, or removed from the state, or that the guardian is about to
misapply, embezzle, or remove from the state, all or any part of the property
committed to the care of the guardian;


 (2) the guardian fails to return any account or report that is required by
law to be made;


 (3) the guardian fails to obey any proper order of the court having
jurisdiction with respect to the performance of the guardian's duties;


 (4) the guardian is proved to have been guilty of gross misconduct or
mismanagement in the performance of the duties of the guardian;


 (5) the guardian becomes incapacitated, or is sentenced to the
penitentiary, or from any other cause becomes incapable of properly performing the
duties of the guardian's trust;


 (6) the guardian neglects or cruelly treats the ward; 

 

 (6-a) the guardian neglects to educate or maintain the ward as liberally as
the means of the ward's estate and the ward's ability or condition permit;


 (7) the guardian interferes with the ward's progress or participation in
programs in the community;


 (8) the guardian fails to comply with the requirements of Section 697 (5) of
this code; or


 (9) the court determines that, because of the dissolution of the joint
guardians' marriage, the termination of the guardians' joint appointment and the
continuation of only one of the joint guardians as the sole guardian is in the best
interest of the ward.

Tex. Prob. Code Ann. § 761(c). 

 We review courts' decisions as to appointments and removals of guardians for abuse of
discretion. See Erickson, 208 S.W.3d at 743; Ellison, 914 S.W.2d at 682.

 Appellees contend that the court's removal of Donald was appropriate under subsection
(c)(4)--"gross misconduct or mismanagement." See Tex. Prob. Code Ann. § 761(c)(4). Appellees
contend that "mismanagement" serves as a "catch-all" ground for removal. In this vein, Appellees
contend that "mismanagement" may encompass management negatively affected by antagonism
between joint guardians. 

 We disagree. We find that such a broad reading (which, in essence, would incorporate a
"catch-all" ground for removal into subsection (c)(4)) is inconsistent with the long-established rule
that courts "have no power to engraft upon" the statute almost globally-wide nonstatutory grounds
for removal. See Kahn, 62 Tex. at 226; cf. Geeslin v. McElhenney, 788 S.W.2d 683, 684-85 (Tex.
App.--Austin 1990, no writ) (in decedent estate administration, "gross mismanagement" or "gross
misconduct" requires proof of more than ordinary negligence). The statutory causes for removal of
a permanent guardian do not include removal solely on the trial court's determination that it is in the
ward's best interest. See Tex. Prob. Code Ann. § 761; see also Erickson, 208 S.W.3d at 744. 
Neither do the statutory causes for removal include antagonism between joint guardians or, even, a
guardian's antagonism of the trial judge. (6) See Tex. Prob. Code Ann. § 761.

 Appellees also contend that Donald engaged in mismanagement both in the initial purchase
of Jeremy's home and in the failure to swiftly transfer title. We note that, while Donald's method of
purchasing the trailer may not have been perfect, a guardian need not be perfect. The Probate Code
"does not require that the guardian of an estate of an incompetent be knowledgeable in probate law,
be an expert in business management, or be experienced in investing money." Blackburn v. Gantt,
561 S.W.2d 269, 273 (Tex. App.--Houston [1st Dist.] 1978, no writ). 

 We are unaware of any authority directly analyzing the level of misconduct or
mismanagement required to remove a guardian under subsection (c)(4). Nonetheless, we are
persuaded by authority examining similar sections of the Probate Code governing removal, for gross
misconduct or mismanagement, of executors and administrators of decedents' estates. (7) See Tex.
Prob. Code Ann. §§ 149C(a)(5), 222(b)(4) (Vernon 2003). In the context of removing a decedent's
administrator, a court should not remove for misconduct or mismanagement on the basis of minor
infractions; the court must determine "whether the breach of fiduciary duty is of sufficient magnitude
to merit removal . . . ." Lee v. Lee, 47 S.W.3d 767, 788 (Tex. App.--Houston [14th Dist.] 2001, pet.
denied). Even mere negligence is insufficient to remove an administrator of a decedent's estate for
gross misconduct or mismanagement, since "one may not reasonably impute to the Legislature an
intent that the terms 'gross mismanagement' or 'gross misconduct' should encompass any and all
deviations from ordinary care." Geeslin, 788 S.W.2d at 684. The statutory terms include "at
minimum: (1) any willful omission to perform a legal duty; (2) any intentional commission of a
wrongful act; and (3) any breach of a fiduciary duty that results in actual harm to a beneficiary's
interest." Id. at 685; see also Sammons v. Elder, 940 S.W.2d 276, 283 (Tex. App.--Waco 1997, writ
denied).

 The record on appeal contains insufficient evidence of any acts on the part of Donald with
regard to the dealings concerning the manufactured home or otherwise that rise to the level of the
"gross misconduct or mismanagement" which would permit the court to remove a guardian under
subsection (c)(4). Appellees provide no authority for the proposition that Donald committed any
wrongful act or breached any duty in the initial signing of the contract to purchase the home. Indeed,
Donald's use of his own funds involved a unilateral risk on his part that he would not be reimbursed.
He did not apply guardianship funds to the purchase until he was authorized to do so by the court. 
In all, the record does not contain evidence in support of the type of willful or intentional breach of
duty, or harm to the ward, to support removal under subsection (c)(4).

 Outside of removal under subsection (c)(4), Appellees do not contend that Donald could be
removed, and the record contains no evidence in support of removing Donald, under Probate Code
§ 761(c). See Tex. Prob. Code Ann. § 761(c). In oral argument, Appellees conceded that none of
the other grounds in that section applied. We note that subsection (c)(1) does not apply since the
record indicates Donald used his own money, not the ward's, to buy the home. See Tex. Prob. Code
Ann. § 761(c)(1). Subsection (c)(3) does not apply since, although the court was obviously
displeased with Donald, the record contains no evidence of an order that Donald failed to obey or
that he took any course of action outside the scope of his authority. See Tex. Prob. Code Ann. §
761(c)(3). There was also no evidence adduced in support of removing Donald under the non-Section 761 grounds found elsewhere in the Probate Code guardianship chapter. (See footnote 3,
above, for list of those grounds.)

 In conclusion, Donald was a properly appointed coguardian under Probate Code § 690. He
may only, therefore, be removed pursuant to the guiding principles as set forth in the statutory
grounds for removal of a guardian. See Tex. Prob. Code Ann. § 761. As he was expressly removed
for grounds not enumerated and no evidence supports his removal under any of the enumerated
grounds of Section 761, the court's removal of him was arbitrary and legally unreasonable. It was
an abuse of discretion. 

III. REINSTATEMENT OF GUARDIAN

 Because we find that the order for removal of Donald was in error, once we reverse and
vacate that order, he remains as coguardian. Accordingly, we find it unnecessary to address the point
of error regarding the failure of the court to reinstate Donald as a guardian pursuant to Probate
Code § 762. 

IV. ATTORNEY'S FEES

 Donald retained new counsel for this appeal. Donald has yet to request the trial court to
charge the ward's estate with the attorney's fees for this appeal. Nonetheless, Donald asks us for a
ruling that he is entitled to attorney's fees for the appeal (with remand to the trial court for a factual
determination of the reasonable fee). On oral argument, the Appellees acknowledged that Donald's
attorney's fees expended on appeal were properly an expense of the guardianship estate. Donald
concedes that "this request may be premature and more correctly presented first to the trial court"
but presents the issue to ensure that it is preserved.

 While a guardian is generally entitled to reimbursement from the estate for attorney's fees,
see Ellison, 914 S.W.2d at 683, the award of attorney's fees for appellate services "is a fact issue
which must be passed upon by the trial court." Int'l Sec. Life Ins. Co. v. Spray, 468 S.W.2d 347, 349
(Tex. 1971). A court of appeals "may not initiate an award [of attorney's fees], since this would be
the exercise of original rather than appellate jurisdiction." Id.; see also Tex. Constr. Assocs., Inc. v.
Balli, 558 S.W.2d 513, 522 (Tex. Civ. App.--Corpus Christi 1977, no writ). 

 Although all parties have agreed that Donald is entitled to his attorney's fees for this appeal,
the fees must be determined by the trial court. (8) The trial court has not yet ruled, so there is nothing
for us to review. The third issue is overruled.

V. CONCLUSION

 We reverse and vacate the order of the trial court removing Donald as guardian.



 Bailey C. Moseley 

 Justice


Date Submitted: March 21, 2007

Date Decided: April 19, 2007



1. See, e.g., Tex. Prob. Code Ann. §§ 618, 680 (Vernon 2003) (respectively: removal through
revocation upon transfer of venue; removal upon different selection by minor over twelve); Tex.
Prob. Code Ann. §§ 695A, 698 (Vernon Supp. 2006) (respectively: removal through appointment
of successor guardian; use of criminal history for removal of certain governmental or professional
guardians); Tex. Prob. Code Ann. § 759 (Vernon 2003) (removal through revocation upon right of
successor guardian); Tex. Prob. Code Ann. § 761 (removal of guardian for cause); Tex. Prob.
Code Ann. §§ 797, 807 (Vernon 2003) (respectively: removal for failure to endorse claim; removal
for purchasing claim against the guardianship); Tex. Prob. Code Ann. §§ 875, 883 (Vernon Supp.
2006) (respectively: removal of temporary guardian; procedures following removal of
nonincapacitated spouse community administrator); and Tex. Prob. Code Ann. § 883C (Vernon
2003) (removal of community administrator).
2. See Section II(d), below.
3. The issue of the application of the exceptions in Probate Code § 690 was not the subject of
the opinions rendered.
4. Ludwig had been convicted, on his wife's testimony, of the capital murder of his five-year-old nephew. Ludwig, 931 S.W.2d at 240. The State contended that the wife's testimony was
admissible since the exception to the privilege applied in the case of a crime against any minor, while
Ludwig contended that the wife's testimony was inadmissible since the exception applied only to
crimes against the spouse's children. Id.
5. Section 697 concerns "private professional guardians." See Tex. Prob. Code Ann. § 697
(Vernon Supp. 2006).
6. Appellees urged in their brief that we affirm for just these "reasons."
7. The guardianship chapter of the Probate Code provides that, "To the extent applicable and
not inconsistent with other provisions of this code, the laws and rules governing estates of decedents
apply to and govern guardianships." Tex. Prob. Code Ann. § 603(a) (Vernon 2003). 
8. There is no reason for us to believe that the court will not direct the payment of attorney's
fees on this appeal. We note that we are more concerned with the court's concurrent appointments
of both appellate counsel and attorney ad litem for the ward. See Coleson v. Bethan, 931 S.W.2d
706, 710-11 (Tex. App.--Fort Worth 1996, no writ) (better practice is for ward's ad litem, appointed
for establishing guardianship, to seek discharge after guardian's qualification).