

# IN THE
# TENTH COURT OF APPEALS

## No. 10-19-00351-CV

## IN THE GUARDIANSHIP OF BOBBY CHARLES JOHNSON,
## AN INCAPACITATED PERSON

**From the County Court at Law No. 1
Brazos County, Texas
Trial Court No. 622-G**

## MEMORANDUM OPINION

In this guardianship proceeding, pro se appellant, Bobbie Johnson-Houston, appears to assert two issues complaining about the trial court's order appointing a permanent limited guardian of the person of Bobby Charles Johnson and full guardian of the estate and the trial court's order granting a motion to withdraw filed by Bobbie's trial counsel. We affirm.[1]

---

[1] We note that the briefs of both Bobbie and Lorine contain numerous technical deficiencies, including a lack of a certificate of service, a failure to sign the brief, and no certification of the number of words contained in the briefs. *See generally* TEX. R. APP. P. 9. We utilize Rule 2 and suspend Rule 9 to expedite a disposition of this proceeding. *See id.* at R. 2.

## I.   BACKGROUND

This proceeding commenced with the filing of an application for appointment of a permanent guardian of the person of Bobby Charles Johnson by Lorine Johnson-Rose on December 14, 2017. In this application, Lorine alleged the following:

> Proposed Ward is an adult, and is incapacitated because of a mental condition. The nature of his incapacity is total, the degree of his incapacity is total, and the severity of his incapacity is total. Proposed Ward is totally without capacity, as provided by the Texas Estates Code, to care for himself, to manage his property, to operate a motor vehicle, to vote in a public election, and make personal decisions regarding residence.
>
> . . .
>
> Applicant requests the Court appoint her as Guardian of the Person of Bobby Charles Johnson, to see to the care of all of Proposed Ward's personal and physical needs.
>
> . . .
>
> Applicant states to the Court that the following facts and reasons support the request for appointment of a Guardian and the granting of the requested powers: Proposed Ward has a history of mental health issues and struggles in discerning between reality and his imagination or memory. He often becomes violent and aggressive when he does not take medication as prescribed.
>
> Proposed Ward is currently a patient at the Austin State Hospital due to involuntary commitment proceedings because he is a danger to himself or others.
>
> Proposed Ward has been unable to handle his financial and personal affairs for years due to these mental health struggles.

Lorine further noted that she is Bobby's sister and that, at the time of the filing, Bobby was in her care and custody.

Appellant Bobbie Johnson-Houston, one of Bobby's other sisters, filed a pro se original answer to Lorine's application for appointment of a guardian, asserting, among other things, that the appointment of Lorine as Bobby's guardian would not be in Bobby's best interest. Shortly thereafter, Philip C. Banks filed a notice of appearance stating that he represented Bobbie. Attorney Banks also filed an application for appointment of a permanent guardian of the person of Bobby and estate pending contest seeking to have Bobbie appointed as guardian of Bobby.

In any event, the trial court appointed attorney and guardian ad litems to represent Bobby's interests. The ad litems both filed answers in this case. Subsequently, the trial court ordered that Bobby submit to a mental examination. During this time frame, attorney Banks filed a motion for withdrawal of counsel, noting "that a conflict of interest has arisen and he is unable to effectively represent Bobbie Johnson Houston." The trial court granted attorney Banks's motion to withdraw as counsel for Bobbie.

After the withdrawal of attorney Banks, Bobbie filed numerous pro se motions in the trial court. Among the pro se motions filed by Bobbie was a motion "raising a grievance against withdrawal of Philip C. Banks as counsel," complaining that she should have been allowed to be heard in open court before the trial court granted attorney Banks's motion to withdraw. Additionally, Bobbie and Lorine both moved to have a mental and physical examination of Bobby done by an independent doctor. The record

reflects that, over the course of this proceeding, three doctors—Dr. Coppedge, Dr. Rockett, and Dr. Potts—evaluated Bobby.

Apparently, at some point in these proceedings, Bobbie and Lorine agreed to Family Eldercare, Inc. serving as permanent guardian of the estate for Bobby Charles Johnson. However, a few weeks later, prior to the trial court entering an order per the agreement of the parties, Bobbie filed multiple pro se documents revoking her consent to having Family Eldercare, Inc. serve as permanent guardian of Bobby's estate.

Based on the reports of the aforementioned doctors and the recommendations of the ad litems, the trial court ultimately entered an order declaring Bobby incapacitated due to a mental condition and appointed Family Eldercare, Inc. as guardian of Bobby's estate and permanent limited guardian of Bobby's person. Despite the foregoing, the trial court indicated that Bobby retained the following rights: (1) the right to operate a motor vehicle and obtain a license to operate a motor vehicle; (2) the right to vote; (3) the right to administer his own medications on a daily basis; (4) the right to attend to basic activities of daily living; and (5) the right to attend to instrumental activities of daily living.

Bobbie filed her pro se notice of appeal, and this appeal followed.

## II.   ANALYSIS

Because appellant's pro se brief consists of numerous grievances and limited citations to the record and to proper authorities, it has been very difficult to discern

appellant's legal issues on appeal. However, in the interest of justice, we will attempt to address appellant's appellate complaints, which, from what we can discern, pertain to: (1) the trial court's granting of attorney Banks's motion to withdraw[2]; and (2) the entry of the final order appointing Family Eldercare, Inc. as full guardian of Bobby's estate and permanent limited guardian of his person.[3]

## A. The Motion to Withdraw

The entirety of Bobbie's argument regarding the trial court's decision on counsel's motion to withdraw is as follows:

> The damage was done when Mr. Banks (Banks & Banks Law Firm) recused himself on February 18th, 2019 was detrimental for Bobby C. and to my case. Bobby did

---

[2] In support of this construction of Bobbie's pro se brief, our records show that Bobbie paid to have a Supplemental Clerk's Record filed that contained primarily the documentation surrounding her trial counsel's motion to withdraw and the trial court's ruling on that motion.

[3] We had hoped appellee's brief would provide more insight into appellant's legal arguments on appeal. However, appellee, Lorine, has filed a pro se brief that is completely devoid of citations to the record and to governing authorities. *See* TEX. R. APP. P. 38.1. We do note, however, that, in her prayer, Lorine specifically requests that this Court appoint her as Bobby's legal guardian. This request appears to be a challenge to the trial court's order appointing Family Eldercare, Inc. as guardian of Bobby's estate and limited guardian of Bobby's person. Nevertheless, the record does not reflect that Lorine filed a notice of appeal in this matter. Accordingly, Lorine has not preserved anything for appellate review. *See id.* at R. 25.1(c) ("A party who seeks to alter the trial court's judgment or other appealable order must file a notice of appeal.")' *see also Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 171 (Tex. 2004) ("Northglen did not file a notice of appeal from the trial court's judgment, did not notice a cross-appeal, and did not petition this court for review on the point. Accordingly, Northglen did not preserve this issue for our review.").

And to the extent that other issues can be divined from Bobbie's pro se appellant's brief, such issues, if any, are not clearly and concisely articulated, nor are they supported by any authorities whatsoever. Therefore, to the extent that Bobbie raises additional issues, we conclude that they are inadequately briefed. *See* TEX. R. APP. P. 38.1(i).

Additionally, on August 11, 2020, we requested responses to Bobbie and Lorine's appellate briefs from all interested parties, including the ad litems, attorney Banks, and Family Eldercare, Inc. Such responses were due within thirty days of August 11, 2020. We have not received any responses from any of the interested parties.

not have an Advocate . . . .  For my Attorney to say paperwork was given to me and was not and to state Bobbie Houston has not consented to the motion is contradicting his own actions. . . .  At Status Hearing on March 22, 2019 the Court stated Mr. Banks Withdrawal as Counsel was signed on March 4th, 2019 . . . .  On withdrawal of Channa Borman, Attorney for Lorine Rose it was done completely differently and should have been the same but differ [sic].

As shown above, Bobbie has not clearly and concisely argued how the trial court erred in granting her trial counsel's motion to withdraw with citations to authority.  *See* TEX. R. APP. P. 38.1(i).  Moreover, what Bobbie appears to be alleging against her trial counsel is something of a grievance for which the trial court was not the proper venue.  Additionally, Bobbie's contention that Bobby did not have an advocate is not accurate, because the record reflects that the trial court appointed both a guardian ad litem and an attorney ad litem to represent Bobby's interests.  Nevertheless, based on our reading of Bobbie's issue, we cannot say that she has sufficiently demonstrated error on the part of the trial court in granting trial counsel's motion to withdraw.  As such, we overrule her first issue.

**B.     The Trial Court's Order on Guardianship**

In what we perceive to be her second issue, Bobbie complains about the trial court's order appointing Family Eldercare, Inc. as Bobby's guardian.

> We review a guardianship determination under an abuse-of-discretion standard.  *In re Guardianship of Finley*, 220 S.W.3d 608, 612 (Tex. App.—Texarkana 2007, no pet.); *Thedford v. White*, 37 S.W.3d 494, 496 (Tex. App.—Tyler 2000, no pet.).  We do not conduct an independent review of findings of fact in such a case under traditional legal and factual sufficiency standards.  [*See*] *Finley*, 220 S.W.3d at 612; *see also In re Marriage of Eilers*, 205 S.W.3d 637, 640 (Tex. App.—Waco 2006, pet. denied) (child support case).

Rather, legal and factual sufficiency are factors which can be considered in determining whether an abuse of discretion has occurred. [*Finley*, 220 S.W.3d at 612].

We view the evidence in the light most favorable to the trial court's decision. *Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 161 S.W.3d 531, 536 (Tex. App.—San Antonio 2004, pet. denied); *Thedford*, 37 S.W.3d at 496-97. An abuse of discretion does not occur when the trial court's decision is based on conflicting evidence. *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978); *Smith v. McCarthy*, 195 S.W.3d 301, 305 (Tex. App.—Fort Worth 2006, pet. denied); *Paul v. Merrill Lynch Trust Co. of Tex.*, 183 S.W.3d 805, 812 (Tex. App.—Waco 2005, no pet.).

*In re Keller*, 233 S.W.3d 454, 459 (Tex. App.—Waco 2007, pet. denied).

In attempting to show that the trial court abused its discretion by appointing Family Eldercare, Inc. as Bobby's guardian, Bobbie argues that Dr. Woodrow Coppedge's certification of medical examination ("CME") did not comply with the Texas Estates Code, as it was not filed with the application for guardianship and it was not timely. To analyze this complaint, we must necessarily analyze the construction of several provisions of the Texas Estates Code.

"A question of statutory construction is a legal one which we review de novo, 'ascertaining and giving effect to the Legislature's intent as expressed by the plain and common meaning of the statute's words.'" *MCI Sales & Serv. v. Hinton*, 329 S.W.3d 475, 500 (Tex. 2010) (quoting *F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 683 (Tex. 2007)). In doing so, our objective is to give effect to the Legislature's intent, which requires us to first look to the statute's plain language. *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015). If that language is unambiguous, we interpret the statute

according to its plain meaning. *Id.* We presume the Legislature included each word in the statute for a purpose and that words not included were purposefully omitted. *Id.; see In re M.N.*, 262 S.W.3d 799, 802 (Tex. 2008).

Without a timely CME, the trial court may not grant a guardianship application, pursuant to section 1101.103 of the Texas Estates Code, which provides in relevant part:

(a) Except as provided by Section 1101.104, the court may not grant an application to create a guardianship for an incapacitated person, other than a minor or person for whom it is necessary to have a guardian appointed only to receive funds from a governmental source, unless the applicant presents to the court a written letter or certificate from a physician licensed in this state that is:

(1) dated not earlier than the 120th day before the application is filed; and

(2) based on an examination the physician performed not earlier than the 120th day before the date the application is filed.

TEX. ESTATES CODE ANN. § 1101.103(a).

In the instant case, Lorine filed her guardianship application on December 14, 2017. Thereafter, she provided the trial court with Dr. Coppedge's CME that was signed on October 18, 2017. However, in this certificate, Dr. Coppedge indicated that he examined Bobby on July 10, 2017—or, in other words, more than 120 days before Lorine filed her guardianship application. *See id.* § 1101.103(a)(2). Dr. Coppedge further indicated that Bobby does not have a developmental disability, though Bobby does have severe schizoaffective disorder. In any event, because Dr. Coppedge did not make a specific finding of intellectual disability, the provisions of section 1101.104 of the Texas

Estates Code were not triggered. *See id.* § 1104.104.[4] Because Dr. Coppedge's examination

occurred more than 120 days before Lorine filed her guardianship application, it does not

satisfy the requirements of section 1101.103(a) of the Texas Estates Code. *See id.* §

1101.103(a).

However, the fact that Dr. Coppedge's examination occurred more than 120 days

before Lorine filed her guardianship application is not fatal. First, section 1101.001 of the

Texas Estates Code outlines the required contents of a guardianship application. *See id.*

§ 1101.001. Nowhere in this section is it required that a CME be filed concurrently or as

---

[4] Section 1101.104 of the Texas Estates Code provides:

If an intellectual disability is the basis for the proposed ward's alleged incapacity, the court may not grant an application to create a guardianship for the proposed ward unless the applicant presents to the court a written letter or certificate that:

    (1)  complies with Sections 1101.103 (a) and (b); or

    (2)  shows that not earlier than 24 months before the hearing date:

        (A)  the proposed ward has been examined by a physician or psychologist licensed in this state or certified by the Department of Aging and Disability Services to perform the examination, in accordance with rules of the executive commissioner of the Health and Human Services Commission governing examinations of that kind, and the physician's or psychologist's written findings and recommendations include a determination of an intellectual disability; or

        (B)  a physician or psychologist licensed in this state or certified by the Department of Aging and Disability Services to perform examinations described by Paragraph (A) updated or endorsed in writing a prior determination of an intellectual disability for the proposed ward made by a physician or psychologist licensed in this state or certified by the department.

TEX. ESTATES CODE ANN. § 1101.104.

a part of the guardianship application. *See id.* And to the extent that section 1101.001 could be construed as requiring a CME to be filed concurrently with a guardianship application, section 1055.002 of the Texas Estates Code states,

> A court may not invalidate a pleading in a guardianship proceeding, or an order based on the pleading, on the basis of a defect of form or substance in the pleading unless a timely objection has been made against the defect and the defect has been called to the attention of the court in which the proceeding was or is pending.

*Id.* § 1055.002. Thus, the absence of a CME filed concurrently with the guardianship application would arguably constitute a pleading defect that would fall within the purview of section 1055.002. *See id.* And because no one objected in the trial court to the untimeliness of Dr. Coppedge's CME and the absence of any other CME filed concurrently with the guardianship application, any potential error would have been waived. *See id.*; *see also* TEX. R. APP. P. 33.1(a)(1); *Benavides v. Soto*, 893 S.W.2d 69, 71 (Tex. App.—Corpus Christi 1994, no writ) ("Untimely objections waives any error on appeal.").

In addition to the foregoing, section 1101.103 of the Texas Estates Code only requires that the applicant present to the court a written letter or certificate from a physician licensed in this state that is "dated not earlier than the 120th day before the date the application is filed" and "based on an examination the physician performed not earlier than the 120th day before the date the application is filed." TEX. ESTATES CODE ANN. § 1101.103. Nothing in the statute precludes the trial court from granting a guardianship application based on examinations that occurred after the guardianship

application was filed. *See id.* This section merely prohibits the trial court from granting a guardianship application based on a stale CME. *See id.*

In the instant case, the trial court's final order indicates that Bobby was examined by two other doctors, Dr. Robert C. Potts and Dr. Jennifer Rockett. The Clerk's Record includes two certificates signed by Dr. Potts. In these certificates, Dr. Potts indicated that he examined Bobby on July 5, 2019, and September 6, 2019. Dr. Jennifer Rockett also purportedly examined Bobby. Although we are unable to find Dr. Rockett's report in the Clerk's Record, the record does include a July 10, 2018 order from the trial appointing Dr. Rockett to make an examination of Bobby by August 21, 2018.

Based on the plain wording of section 1101.103 and taking into consideration sections 1055.002 and 1101.001, we cannot conclude that the trial court abused its discretion by granting Lorine's guardianship application. *See id.* §§ 1055.002, 1101.001, 1101.103; *see also In re Keller*, 233 S.W.3d at 459; *In re Guardianship of Finley*, 220 S.W.3d at 612; *Thedford*, 37 S.W.3d at 496. This is because the reports of Dr. Potts and Dr. Rockett were not dated "earlier than the 120th day before the date the application" was filed, and because their examinations were not performed "earlier than the 120th day before the date the application" was filed. In other words, the reports of Dr. Potts and Dr. Rockett satisfied the requirements of section 1101.103. *See* TEX. ESTATES CODE ANN. § 1101.103. And because the trial court had section 1101.103-compliant reports before it when it granted the guardianship application, it could not have abused its discretion on this basis.

*See id.; see also In re Keller*, 233 S.W.3d at 459; *In re Guardianship of Finley*, 220 S.W.3d at 612;

*Thedford*, 37 S.W.3d at 496. We therefore overrule Bobbie's second issue.

### III. CONCLUSION

We affirm the judgment of the trial court.

JOHN E. NEILL
Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Neill
Affirmed
Opinion delivered and filed October 7, 2020
[CV06]

