**Opinion issued December 22, 2022**



In The

# Court of Appeals

For The

# First District of Texas

———————————————

## NO. 01-21-00403-CV

———————————————

## IN THE GUARDIANSHIP OF SAMANTHA LUGO, AN INCAPACITATED PERSON

———————————————

**On Appeal from Probate Court No. 4**
**Harris County, Texas**
**Trial Court Case No. 382193**

———————————————

## MEMORANDUM OPINION ON REHEARING

Appellee, Marissa Garcia, guardian ad litem for Samantha Lugo, an

incapacitated person ("Samantha"), has filed a motion for rehearing of our July 26,

2022 opinion and judgment.[1] We grant the motion for rehearing, withdraw our opinion and judgment of July 26, 2022, and issue this opinion and new judgment in their stead.

Appellant, Guadalupe Lugo, also known as Tish Lugo ("Tish"), challenges the trial court's order denying her bill of review[2] to set aside a prior order removing her as the guardian of the person and estate of her sister, Samantha.[3] In two issues, Tish contends that the trial court erred in denying her bill of review.

We dismiss in part and reverse, render, and remand in part.

## Background

Tish was appointed as the guardian of the person and estate of Samantha in 2016. In the order appointing Tish as guardian of Samantha's person and Samantha's estate, the trial court granted Tish "full authority" over Samantha "except as provided by law." The order also gave Tish "the right to physical possession of" Samantha and the right "to establish [Samantha's] legal domicile."[4]

---

[1] *See* TEX. R. APP. P. 49.1. In her motion for rehearing, Garcia requested that this Court modify its judgment so that "appellate court costs" are not "taxed" against her.

[2] *See* TEX. EST. CODE ANN. § 1056.101.

[3] Appellees are Regions Bank (the "Bank"), Ginger S. Lott, temporary guardian pending contest of the person and estate of Samantha, and Garcia, guardian ad litem for Samantha.

[4] *See* TEX. PROP. CODE ANN. § 1151.051(c)(1).

In June 2020, the Bank, the trustee of a trust created for Samantha's benefit under Texas Property Code chapter 142[5] (the "trust"), filed an application to remove Tish as the guardian of Samantha's person and a motion to terminate the guardianship of the estate of Samantha.[6] In its first amended application and motion, the Bank explained that Samantha, in infancy, "suffered a brain injury which left her incapacitated for the remainder of her life," and the settlement of a medical malpractice lawsuit filed by Samantha's parents led to the creation of the trust.

The Bank also recounted certain interactions it had with Tish about Samantha's guardianship over a couple of years. According to the Bank, Tish informed it in May 2018 that she intended to build a home for Samantha on an unimproved tract of land located on Memorial Drive in Houston, Texas (the "Memorial tract"), property owned by Tish's and Samantha's mother (the "mother"). Tish planned to build a home that "would accommodate [Samantha's] physical needs and oversized wheelchair." At Tish's request, the Bank "distributed $43,000" to her from the trust for "architectural plans" and "to pay $25,000 towards the pouring of a slab for the new residence." But Tish did not mention the $43,000

---

[5] *See id.* § 142.001–.010.

[6] When the trial court appointed Tish as guardian of Samantha's estate, it did so to explore the possibility of converting the trust into a "special needs trust." *See* 42 U.S.C. § 1396p(d)(4)(A); *see also* TEX. EST. CODE ANN. § 1151.051(c)(5).

distribution from the trust in her annual guardian's report on the location, condition, and well-being of Samantha.[7]

The Bank objected to Tish's annual report because it failed to mention the $43,000 distribution. After Tish amended the report by adding a footnote explaining that the funds had been distributed to her in her individual capacity to reimburse her for the use of her own funds to pay "architects, engineers, and builders to develop plans for housing which could best accommodate [Samantha's] needs," the Bank withdrew its objection, and the trial court approved Tish's annual report.

The Bank alleged that Tish, in January 2019, asked for "another distribution from the trust to build" the Memorial tract home. The Bank responded that it would "need to take a lien against the Memorial tract in an amount equal to the distribution amount" before it would distribute funds from the trust for that purpose. Tish then said that the plans to build a home on the Memorial tract "were off" and "she was moving to Puerto Rico."

According to the Bank, in April 2019, Tish applied to transfer Samantha's guardianship to a foreign jurisdiction, Puerto Rico.[8] In her application, Tish "asserted that it was necessary and in the best interest[] of [Samantha] to move [Samantha] to Puerto Rico because [Samantha's] immediate family was moving

---

[7] *See* TEX. EST. CODE ANN. § 1151.052(b).

[8] *See id.* § 1253.001.

4

there." In July 2019, Tish asked the Bank to distribute $3,533.40 from the trust to pay for two tickets for a cruise from Orlando, Florida to San Juan, Puerto Rico so that Samantha could be transported "to Puerto Rico in the most comfortable way possible."

The Bank responded to the request for distribution by asking Tish "whether arrangements ha[d] been made to establish a permanent residence in Puerto Rico" and whether she had "started the legal proceedings in Puerto Rico to permanently move [Samantha's] guardianship" there. Tish's trial counsel informed the Bank "that a residence was being established and that Puerto Rican counsel had been either retained or consulted regarding filing pleadings necessary to transfer the guardianship."

The Bank then filed an application for a temporary restraining order and a temporary injunction to prevent Tish "from removing [Samantha] from Texas." The parties agreed to a temporary injunction, signed by the trial court, in which Tish agreed not to remove Samantha from Texas until either the trial court granted Tish's application to transfer the guardianship to a foreign jurisdiction or the Bank agreed to dissolve the temporary injunction. After further discussions between the Bank and Tish, Tish, in March 2020, informed the Bank that "the move to Puerto Rico was on hold."

As grounds for Tish's removal as guardian of Samantha's person, the Bank asserted that Tish had failed to adequately account for the $43,000 distribution to her from the trust or to use those funds for their intended purposes and had acted improperly by "us[ing] [Samantha's] resources for [her] personal and monetary benefit." The Bank also asserted that Tish had been generally "non-compliant"; had "a history of not listening to [the trial court] or to any person associated with keeping [Samantha] and her funds safe"; "habitually fail[ed] to file timely reports"; and "delay[ed] two months before complying with the [trial court's] order to file an increased bond."

Further, the Bank alleged that Tish had "create[d] unnecessary costs and financial drain on [Samantha's] finances," citing her hiring of eight different attorneys and firing of seven since her appointment as guardian of Samantha's person and Samantha's estate and the friction between Tish and the trust companies, including the Bank's two predecessor trustees. The Bank also asserted that removal of Tish as guardian was in Samantha's best interest because Tish "never complied" with the guardian ad litem's 2016 recommendations to either modify Samantha's residence or move her "to a living facility or a home that w[ould] provide a larger living space for her care."

6

As grounds for termination of the guardianship of the estate of Samantha, the Bank asserted that Samantha's estate had no assets, and there was no need for a guardianship of the estate of Samantha.

The Bank requested that the trial court remove Tish as the guardian of Samantha's person and appoint another person as the guardian of the person of Samantha. The Bank also requested that the guardianship of the estate of Samantha be terminated.

In her response to the Bank's first amended application to remove her as guardian of Samantha's person and motion to terminate the guardianship of the estate of Samantha, Tish requested that the trial court deny the Bank's application and motion. Tish noted, as to the $43,000 distribution to her from the trust, that at the time of the distribution, the Bank had classified it "as a direct reimbursement to Tish" and had transferred the funds into her personal account. Tish had maintained the distribution "as an intact fund since it was distributed and bonded for the past year" that was "intended to pay for [Samantha's] accommodations in the family's new home." When the Bank objected to the failure to include the $43,000 distribution in Tish's annual report, Tish "amended her . . . [a]nnual [report] to explain that the[] funds were distributed to her directly and not the guardianship estate." The Bank then withdrew its objection.

7

Tish also acknowledged that in April 2019, she filed an application to transfer the guardianship to a foreign jurisdiction, in which she sought "to establish permanent residence for [Samantha] in Puerto Rico," along with the rest of her family, "for personal and financial reasons." According to Tish, tension began to grow between her and the Bank after she had informed the Bank of her desire to move to Puerto Rico.

Tish also pointed out that the Bank had recently failed to pay the court-ordered monthly allowance of $5,000 to the mother, Samantha's caregiver, for Samantha's health, education, support, and maintenance needs. Tish had "covered [those] expenses directly from her own pocket to ensure that [Samantha's] needs [were] being met."

As to the Bank's urged reasons for removal of Tish as the guardian of Samantha's person, Tish asserted that personal discord between a trustee and a guardian was not a statutory basis for removal of a guardian. Tish also noted that in July 2019, the Bank had unequivocally tendered its own resignation as trustee of Samantha's trust in anticipation of Samantha's move to Puerto Rico, and according to Tish, the Bank "ha[d] acted as resigned trustee since that date." Tish asserted that the Bank had failed to plead a proper basis for removal of her as the guardian of Samantha's person or for termination of the guardianship of the estate of Samantha.

Garcia, Samantha's guardian ad litem, also filed a response to the Bank's first amended application to remove Tish as guardian of Samantha's person and motion to terminate the guardianship of the estate of Samantha, asserting that Tish should be removed as the guardian of Samantha's person and the guardianship of the estate of Samantha should be terminated. As to the $43,000 distribution to Tish from the trust, Garcia noted that the distribution was made for the "construction of a new home" for Tish, Tish's family, Samantha, and the mother, but "[t]he home was never built." Tish had "decided against building the home" on the Memorial tract and Tish's counsel "confirmed that the money [was] sitting in the same account" into which it was initially deposited and "ha[d] not been used." But "the money ha[d] not been returned to the [t]rust." Yet, according to Garcia, "an agreement to return the funds" to the trust was "being discussed between the parties."

Garcia also informed the trial court that the Bank had not paid "any of [Samantha's] expenses" for the previous two months. The Bank appeared to be withholding the funds because it "wanted Tish to agree to a new annual budget." When the Bank asked Tish to agree to the new budget, she "suggested . . . that since there ha[d] been no changes, [the Bank] should be able to continue with the prior annual budget." The Bank apparently took that response as a refusal to approve the proposed annual budget, and it "stopped all payments from that point on." Garcia stated that she was displeased with the apparent inability of Tish and the Bank "to

9

cooperate for Samantha's best interest," noting that the "toxicity between the two [parties] ha[d] led to several tens of thousands in legal fees being spent by the trust, with more to come."

As to the removal of Tish as the guardian of Samantha's person, Garcia agreed that Tish should be removed if she continued to pursue the "move to Puerto Rico." Garcia observed that Tish had been planning to move her "entire family" to Puerto Rico for her own business reasons, and "[w]hile it appear[ed] the move would be a positive one for Tish's business," in Garcia's opinion, it would "create[] a strain on [Samantha's] [g]uardianship." Garcia was also "concern[ed] about the continued growth of the [t]rust" and its "sustainability and management" if it were moved to Puerto Rico because Puerto Rican law recognized only a guardianship of the estate and did not recognize the form of trust that had been created and maintained for Samantha under Texas law. Given all those factors, Garcia concluded that it would be in Samantha's "best interest to [r]emove Tish" as the guardian of Samantha's person and appoint the mother as successor guardian of Samantha's person.

At the hearing on the Bank's first amended application to remove Tish as the guardian of the person of Samantha and motion to terminate the guardianship of the estate of Samantha, the trial court made clear that it wanted to have the Bank's application for removal heard before it addressed any issues about the Bank's resignation as trustee. The Bank's trial counsel informed the trial court that the

10

parties had been "unable to reach a resolution"—apparently as to Tish's resignation or removal—and the Bank was "ready to proceed" with argument on its application for removal. But before proceeding, the trial court gave Tish's trial counsel additional time to meet with Tish to continue to try to settle the dispute with the Bank as to Samantha's guardianship.

When the hearing resumed, the trial court asked Tish's trial counsel if an agreement had been reached. He answered that it had not, but that Tish had "offer[ed] her resignation as guardian of [Samantha's] person and estate," conditioned on the mother's appointment as the successor guardian of Samantha's person. The trial court asked the Bank whether it accepted Tish's offer, and the Bank's trial counsel responded that while the Bank was "in favor of [Tish's] resignation," it had "some concerns" about having the mother appointed as the successor guardian of Samantha's person.

After further discussion, the trial court stated:

> We have two steps to do, obviously. One is the removal, either by agreement or by [c]ourt ruling. And, then, the qualification of anyone named as successor. So . . . if your client's position is that her resignation is conditional and the other parties are not willing to accept that, then we're going to start the case now on removal.

Speaking directly to Tish's trial counsel, the trial court then explained that it "just need[ed] to find out if [Tish's] decision to resign [was] unconditional" in order to

"move on to the next issue as to whether or not [the] mother [was] suitable to serve" as guardian of Samantha's person.

The trial court then allowed Tish's trial counsel another short break to confer with Tish. When trial counsel returned, he informed the trial court that Tish still did not "have an agreement" with the Bank. Counsel asked the trial court if it could determine whether the mother was qualified to serve as guardian of Samantha's person before Tish resigned. The trial court said it would not. It told Tish's counsel, "[E]ither you decide to . . . have your client resign, or we're going to have testimony regarding the removal."

After the Bank's first witness was sworn but before the witness testified, Tish's trial counsel interjected, "Your Honor, my client said that she unconditionally resigns" as the guardian of Samantha's person and guardian of the estate of Samantha. The Bank's trial counsel responded: "We accept that." And the trial court stated, "All right. Very good." Without hearing testimony from any witness on the removal of Tish as the guardian of Samantha's person or the termination of the guardianship of the estate of Samantha, the trial court immediately turned to consider whether the appointment of the mother as the successor guardian of Samantha's person would be in Samantha's best interest, and it heard testimony from the mother on that issue.

At the close of the hearing, the trial court told the parties that it wanted to have "two orders" prepared. As to the first order, the trial court asked Tish's trial counsel to draft an order for Tish's resignation as guardian of Samantha's person and the estate of Samantha, noting that it understood that she had "resigned, but" explaining that it wanted "to have that in writing." As to the second order, the trial court stated that it believed it also "need[ed] to sign an order actually removing [Tish]" as guardian of Samantha's person and the estate of Samantha and that it would "sign [that] order" after it received Garcia's "additional report and the proposed order of resignation."

Tish's trial counsel noted that "[t]he resignation as guardian of the estate require[d] the discharge of the bond," and he proposed that the discharge be included in the agreed order closing the guardianship of the estate. And he agreed to "prepare that as well and submit it to the [trial] [c]ourt."

Tish's trial counsel then asked the trial court to confirm his understanding that he was to draft "an order related to acceptance of the resignation" of the trustee and an agreed order terminating the guardianship of the estate and discharging the bond. The trial court asked the parties if they needed an immediate "ruling on [the mother's] suitability" to be appointed as the guardian of Samantha's person and indicated that it was "ready to make a ruling on that." Alternatively, the trial court offered to give the parties "some time to work out the agreements before" it made

13

the ruling. The trial court, in the end, did not rule on the appointment of the mother as the successor guardian of Samantha's person. It scheduled a status conference with the parties for a later date.

On October 20, 2020, three events then happened in the case. First, the mother filed an agreed motion to continue the status conference previously set by the trial court, which the trial court granted.

Second, Tish filed her "Resignation of the Guardian of the Person and Estate," in which she stated that she was appointed as guardian of the person and the estate of Samantha in 2016. And effective October 2, 2020, she resigned as guardian of Samantha's person and Samantha's estate. She would "file her verified [f]inal [a]ccount and [f]inal [r]eport" by October 28, 2020.[9] She asked the trial court to accept her resignation and discharge her and her corporate surety.

Third, the trial court signed an "Order Removing Personal Representative and Appointing Temporary Guardian of the Person and Estate Pending Contest" (the "removal order"). In the removal order, the trial court, "on its own motion," stated that it was considering the removal of Tish as guardian of the person and guardian of the estate of Samantha. And it concluded that Tish was "no longer suitable to serve as guardian." Thus, it ordered that Tish be "removed as [g]uardian of the

---

[9]     *See id.* §§ 1163.101–.105

14

[p]erson and [e]state of Samantha" and that "the letters . . . issued to her . . . be surrendered and that all such letters be canceled of record whether delivered or not." (Emphasis omitted.) The trial court then determined "that a necessity for a [g]uardian still exist[ed]" and appointed a "temporary guardian pending contest of the person and estate of [Samantha]." (Emphasis omitted.)

In May 2021, Tish filed her first amended bill of review seeking withdrawal of the trial court's removal order.[10] She argued that the removal order "was entered in error because [she had] resigned as guardian [of Samantha's person and the estate of Samantha], and no evidence was heard to support the trial court's finding on removal." Also, the removal order "was plainly inconsistent with what [had] transpired at the hearing" on the Bank's first amended application to remove Tish as the guardian of the person of Samantha and motion to terminate the guardianship of the estate of Samantha and was "not supported by evidence." According to Tish, the reporter's record from the hearing "show[ed] that [Tish] resigned voluntarily and . . . no evidence was presented or admitted as to her removal."

In its objection to Tish's bill of review, the Bank argued the trial court was not required to accept Tish's verbal resignation as guardian of Samantha's person and the estate of Samantha tendered through her trial counsel at the hearing. The

---

[10] *See id.* § 1056.101.

15

trial court also was not required to accept Tish's written resignation, filed on October 20, 2020, because it did not qualify as a "written application" for resignation under Texas Estates Code section 1203.001.[11] And "[n]o necessity existed that would have required the [t]rial [c]ourt to accept" Tish's resignation.

Further, the Bank asserted that the trial court's records contained sufficient evidence to support Tish's removal, namely: (1) her frequent hiring and firing of attorneys to represent her as guardian of Samantha's person and the estate of Samantha; (2) her failure to timely file annual accounts and reports; (3) her attempt to move Samantha from Texas to Puerto Rico; (4) her unspecified actions which caused the "removal/resignation and replacement of two trustee companies"; (5) her failure to modify Samantha's home as recommended by Garcia, Samantha's guardian ad litem; (6) her requests to the Bank to approve approximately $100,000 in attorney's fees that she had incurred for payment by the trust; and (7) her having taken $43,000 in trust funds for expenses to build a home on the Memorial tract and her later returning those funds after acknowledging they had been in her personal account all along.

---

[11]    *See id.* § 1203.001 ("A guardian of . . . the person who wishes to resign the guardian's trust shall file a written application with the court clerk, accompanied by a verified report containing the information required in the annual report required under [Texas Estates Code sections 1163.101–.105], showing the condition of the ward entrusted to the guardian's care.").

In her reply to the Bank's objection, Tish argued that the trial court's removal order and the Bank's response did not account for what had occurred at the hearing on the Bank's first amended application to remove Tish as the guardian of the person of Samantha and motion to terminate the guardianship of the estate of Samantha, because it was "clear from the [reporter's record] that both [the Bank] and the [trial court] were satisfied with . . . Tish's unconditional resignation as guardian [of Samantha's person and the estate of Samantha] which was made in open court." In particular, she noted that "[a]fter the resignation was made, [the Bank's] counsel stated, 'We accept that,' and the [trial] [c]ourt stated, 'All right, very good.'"

The trial court denied Tish's bill of review without a hearing.

## Standard of Review

A bill of review is a separate, independent suit, brought by a party to a former action, to set aside a final judgment that is no longer subject to a motion for new trial or appealable. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 504 (Tex. 2010); *Woods v. Kenner*, 501 S.W.3d 185, 190 (Tex. App.—Houston [1st Dist.] 2016, no pet.); *see* TEX. R. CIV. P. 329b(f). We review a trial court's ruling on a bill of review for an abuse of discretion, indulging every presumption in favor of the court's ruling. *Woods*, 501 S.W.3d at 190; *Li v. DDX Grp. Inv., LLC*, 404 S.W.3d 58, 62 (Tex. App.—Houston [1st Dist.] 2013, no pet.). A trial court abuses its discretion if it acts in an unreasonable or arbitrary manner, or without reference to guiding rules and

principles. *Woods*, 501 S.W.3d at 190; *Li*, 404 S.W.3d at 62. Under the abuse-of-discretion standard, evidentiary sufficiency issues are not independent grounds of error, but the sufficiency of the evidence is a relevant factor in determining whether the trial court abused its discretion. *Kubbernus v. ECAL Partners, Ltd.*, 574 S.W.3d 444, 486 (Tex. App.—Houston [1st Dist.] 2018, pet. denied); *Vandervlist v. Samara Portfolio Mgmt., LLC*, No. 14-16-00044-CV, 2017 WL 3194062, at *6 (Tex. App.—Houston [14th Dist.] July 27, 2017, pet. denied) (mem. op.); *In re Guardianship of Finley*, 220 S.W.3d 608, 612 (Tex. App.— Texarkana 2007, no pet.). A trial court does not abuse its discretion where the record contains some evidence of a substantial and probative character to support its ruling. *Vandervlist*, 2017 WL 3194062, at *6.

Pertinent here, Texas Estates Code section 1056.101 provides:

(a) An interested person, including a ward, may, by a bill of review filed in the court in which the guardianship proceeding was held, have an order or judgment rendered by the court revised and corrected on a showing of error in the order or judgment.

(b) Except as provided by [s]ubsection (c), a bill of review to revise and correct an order or judgment may not be filed more than two years after the date of the order or judgment.

TEX. EST. CODE ANN. § 1056.101(a), (b).[12]

---

[12] The Texas Estates Code similarly provides for bills of review in probate proceedings. *See id.* § 55.251.

A movant seeking an equitable bill of review must plead and prove (1) a meritorious defense to the underlying cause of action, (2) which the movant was prevented from making by the fraud, accident or wrongful act of the opposing party or official mistake, (3) unmixed with any fault or negligence on her own part. *Valdez v. Hollenbeck*, 465 S.W.3d 217, 226–27 (Tex. 2015) (elements of "equitable bill of review"). But a statutory bill of review[13] is not subject to the same limitations or requirements of an equitable bill of review. *Woods*, 501 S.W.3d at 191; *see also McDonald v. Carroll*, 783 S.W.2d 286, 288 (Tex. App.—Dallas 1989, writ denied). Instead of the three elements required to prove an equitable bill of review, the movant seeking a statutory bill of review only needs to show "substantial error" in the challenged order or judgment. *Valdez*, 465 S.W.3d at 226–27; *Woods*, 501 S.W.3d at 191. Such substantial error "need not have appeared on the face of the record and the movant may prove the error at trial by a preponderance of the evidence." *Ablon v. Campbell*, 457 S.W.3d 604, 609 (Tex. App.—Dallas 2015, pet. denied). Thus, to prevail on her statutory bill of review, Tish was required to specifically allege and prove, by a preponderance of the evidence, substantial error in the removal order.

---

[13]     Statutory bills of review exist predominantly in the probate and guardianship contexts. *See Valdez v. Hollenbeck*, 465 S.W.3d 217, 226 (Tex. 2015).

## Bill of Review

In a portion of her first issue[14] and in her second issue, Tish argues that the trial court erred in denying her bill of review because the removal order "removed" Tish as guardian of Samantha's person and the estate of Samantha when she actually resigned as guardian and no evidence supported her removal by the trial court. Tish also asserts that the removal order should be corrected to reflect that she resigned as guardian of Samantha's person and the estate of Samantha.

---

[14] Tish's first issue is phrased to directly challenge the removal order instead of the trial court's order denying Tish's bill of review. But Tish did not timely appeal the trial court's October 20, 2020 removal order, which, in the context of this guardianship proceeding, constituted a final judgment. *In re Webster*, No. 05-15-00945-CV, 2015 WL 4722306, at *2 (Tex. App.—Dallas Aug. 10, 2015, orig. proceeding) (mem. op.) ("Texas law has long recognized that an order removing a guardian is a final appealable order."); *see, e.g.*, *Stevens v. Douglas*, 505 S.W.2d 532, 532 (Tex. 1974) (order setting aside appointment of person as administrator and reinstating the appointment of prior administrator was decree determining all issues of law and fact between parties and thus constituted final and appealable judgment); *Pine v. deBlieux*, 360 S.W.3d 45, 46–47 & n.1 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) (order accepting initial administrator's resignation and appointing successor administrator was appealable); *see generally De Ayala v. Mackie*, 193 S.W.3d 575, 578 (Tex. 2006) ("Probate proceedings are an exception to the one final judgment rule; in such cases, multiple judgments final for purposes of appeal can be rendered on certain discrete issues." (internal quotations omitted)). Any party "seek[ing] to alter the trial court's judgment or other appealable order" must timely file a notice of appeal. *See* TEX. R. APP. P. 25.1(c). Generally, if a party fails to timely file a notice of appeal, we have no jurisdiction to address the merits of that party's appeal. *See* TEX. R. APP. P. 25.1(b); *In re K.L.L.*, 506 S.W.3d 558, 560 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (without timely notice of appeal, appellate court lacks jurisdiction over appeal); *Brashear v. Victoria Gardens of McKinney, L.L.C.*, 302 S.W.3d 542, 545–46 (Tex. App.—Dallas 2009, no pet.) (timely filing of notice of appeal is jurisdictional prerequisite). To the extent that Tish's first issue directly challenges the trial court's October 20, 2020 removal order, we hold that we lack jurisdiction to address that portion of her first issue.

The trial court, in its removal order, stated that it was "remov[ing]" Tish as "[g]uardian of the [p]erson and [e]state of Samantha" because it had determined that she was "no longer suitable to serve as guardian." (Emphasis omitted.) A guardian appointed under Texas guardianship law may be "removed only for some cause declared by the statute to be a sufficient cause." *Kahn v. Israelson*, 62 Tex. 221, 225 (1884); *see also Finley*, 220 S.W.3d at 612. In other words, the statutory grounds for removal are exclusive. *See In re Guardianship of LaRoe*, No. 05-15-01006-CV, 2017 WL 511156, at *12 (Tex. App.—Dallas Feb. 8, 2017, pet. denied) (mem. op.); *Finley*, 220 S.W.3d at 612.

Texas Estates Code sections 1203.051 and 1203.052 govern the removal of a guardian appointed under Texas guardianship law either with or without notice. *See* TEX. EST. CODE ANN. §§ 1203.051 ("Removal Without Notice"), 1203.052 ("Removal with Notice"). The trial court's stated reason for removing Tish as guardian of Samantha's person and the estate of Samantha—that Tish was "no longer suitable to serve as guardian"—is not a statutory ground for removal of a guardian. *See id.* §§ 1203.051, 1203.052. And thus, the trial court erred in removing Tish as the guardian of Samantha's person and the estate of Samantha because she was "no longer suitable."

But a trial court "cannot abuse its discretion if it reaches the right result, even for the wrong reasons." *Finley*, 220 S.W.3d at 612. Accordingly, if the record shows

21

that a statutory ground supports Tish's removal as the guardian of Samantha's person and the estate of Samantha, then there would not be substantial error in the removal order and the trial court would not have erred in denying Tish's bill of review.

Under Texas Estates Code section 1203.051, a trial court may remove a guardian appointed under Texas guardianship law based on certain, more serious, grounds without notice. *See* TEX. EST. CODE ANN. § 1203.051(a). To remove a guardian under Texas Estates Code section 1203.052 though, the trial court must provide notice to the guardian before her removal. *See id.* § 1203.052(a), (a-1).

Specifically, Texas Estates Code section 1203.051 allows for the removal of a guardian appointed under Texas guardianship law, without notice, either on the court's own motion or on the motion of an interested person, if the guardian:

(1)    neglects to qualify in the manner and time required by law;

(2)    fails to return, not later than the 30th day after the date the guardian qualifies, an inventory of the guardianship estate property and a list of claims that have come to the guardian's knowledge, unless that deadline is extended by court order;

(3)    if required, fails to give a new bond within the period prescribed;

(4)    is absent from the state for a consecutive period of three or more months without the court's permission, or removes from the state;

(5)    cannot be served with notices or other processes because:

(A)    the guardian's whereabouts are unknown;

(B)    the guardian is eluding service; or

22

(C)    the guardian is a nonresident of this state who does not have a resident agent to accept service of process in any guardianship proceeding or other matter relating to the guardianship;

(6)    subject to [Texas Estates Code] [s]ection 1203.056(a):

(A)    has misapplied, embezzled, or removed from the state, or is about to misapply, embezzle, or remove from the state, any of the property entrusted to the guardian's care; or

(B)    has engaged in conduct with respect to the ward that would be considered to be abuse, neglect, or exploitation . . . ; or

(7)    has neglected to educate or maintain the ward as liberally as the means of the ward and the condition of the ward's estate permit.

*Id.* § 1203.051(a).  Texas Estates Code section 1203.056(a) provides that "[t]he court may remove a guardian under [s]ection 1203.051(a)(6)(A) or (B) only on the presentation of clear and convincing evidence given under oath." *Id.* § 1203.056(a).

Under Texas Estates Code section 1203.052(a), a court may remove a guardian with notice, either on the court's own motion or on the motion of an interested person, if:

(1)    sufficient grounds appear to support a belief that the guardian has misapplied, embezzled, or removed from the state, or is about to misapply, embezzle, or remove from the state, any of the property entrusted to the guardian's care;

(2)    the guardian fails to return any account or report that is required by law to be made;

(3)    the guardian fails to obey a proper order of the court that has jurisdiction with respect to the performance of the guardian's duties;

(4)    the guardian is proved to have been guilty of gross misconduct or mismanagement in the performance of the guardian's duties;

(5) the guardian:

    (A) becomes incapacitated;

    (B) is sentenced to the penitentiary; or

    (C) from any other cause, becomes incapable of properly performing the duties of the guardian's trust;

(6) the guardian has engaged in conduct with respect to the ward that would be considered to be abuse, neglect, or exploitation, as those terms are defined by [s]ection 48.002, Human Resources Code, if engaged in with respect to an elderly person or person with a disability, as defined by that section;

(7) the guardian neglects to educate or maintain the ward as liberally as the means of the ward's estate and the ward's ability or condition permit;

(8) the guardian interferes with the ward's progress or participation in programs in the community;

(9) the guardian fails to comply with the requirements of [Texas Estates Code] [s]ubchapter G, [c]hapter 1104;

(10) the court determines that, because of the dissolution of the joint guardians' marriage, the termination of the guardians' joint appointment and the continuation of only one of the joint guardians as the sole guardian is in the best interest of the ward; or

(11) the guardian would be ineligible for appointment as a guardian under [Texas Estates Code] [s]ubchapter H, [c]hapter 1104.

*Id.* § 1203.052(a), (a-1). For a court, on its own motion, to remove a guardian based on one of the grounds provided in section 1203.052(a), the guardian must have been "notified, by certified mail, return receipt requested, to answer at a time and place set in the notice." *Id.* § 1203.052(a-1).

24

Here, Tish was not notified of or given an opportunity to respond to the trial court's sua sponte motion to remove her as guardian of Samantha's person and the estate of Samantha before the trial court signed the removal order. As a result, we consider only whether any of the grounds set forth in Texas Estates Code section 1203.051(a) support her removal without notice.

As to whether Tish "neglect[ed] to qualify" as guardian "in the manner and time required by law," the statute for qualification requires a guardian, before the twenty-first day of an order granting letters of guardianship, to: (1) take an oath or make a declaration to faithfully discharge her duties and file it with the court;[15] (2) give a bond, if required; (3) "file[] the bond with the clerk"; and (4) "obtain[] the judge's approval of the bond." *Id.* § 1105.002; *see also id.* § 1203.051(a)(1). The record contains a signed oath and an approved bond filed on or before the date of the trial court's 2016 order appointing Tish as guardian of Samantha. There is no evidence showing that the trial court could have removed Tish as guardian because she "neglect[ed] to qualify" as guardian. *See id.* § 1203.051(a)(1).

The record also does not show that Tish, while acting as guardian of Samantha's person or the estate of Samantha, "fail[ed] to return, not later than the 30th day after the date [she was] qualif[ied], an inventory of the guardianship estate

---

[15] *See* TEX. EST. CODE ANN. § 1105.051.

25

property and a list of claims that ha[d] come to [her] knowledge." *See id.* § 1203.051(a)(2). As to whether Tish "fail[ed] to give a new bond within the period prescribed," we note that the record shows that Tish was once late in paying an increase in bond ordered by the trial court, but she ultimately paid the increase, after which the trial court approved the bond. *See id.* § 1203.051(a)(3). Thus, there is no evidence showing that the trial court could have removed Tish as guardian because she "fail[ed] to return . . . any inventory of the guardianship estate property" or "a list of claims" or because she "fail[ed] to give a new bond." *See id.* § 1203.051(a)(2), (a)(3).

Further, the record raises no question about Tish's whereabouts and does not show that she could not be found. *See id.* § 1203.051(a)(4) (guardian may be removed because she "is absent from the state for a consecutive period of three or more months with the court's permission, or removes from the state"), 1203.051(a)(5) (guardian may be removed because she could not "be served with notices of other processes because" her whereabouts were unknown, she was eluding service, or she was a nonresident of state "who d[id] not have a resident agent to accept service of process"). Thus, there is no evidence showing that the trial court could have removed Tish as guardian because she was "absent from the state" or because she could not "be served with notices of other processes." *See id.* § 1203.051(a)(4), (a)(5).

26

And as to the ground for removal set forth in Texas Estates Code section 1203.051(a)(6), the trial court could not have relied on that provision to remove Tish as guardian because it does not apply here.  Under section 1203.051(a)(6), the trial court could only remove a guardian if there had been a "presentation of clear and convincing evidence given under oath," and the trial court in this case heard no evidence at the hearing as to Tish's removal.  *See id.* §§ 1203.051(a)(6), 1203.056(a) ("The court may remove a guardian under [s]ection 1203.051(a)(6)(A) or (B) only on the presentation of clear and convincing evidence given under oath.").  Finally, nothing in the record suggests that Tish neglected "to educate or maintain [Samantha] as liberally as the means of [Samantha] and the condition of [Samantha's] estate permit[ted]."  *See id.* § 1203.051(a)(7).  Thus, there is no evidence showing that the trial court could have removed Tish as guardian because she "neglected to educate or maintain" Samantha.  *See id.*

Because none of the statutory grounds under Texas Estates Code section 1203.051(a) support the trial court's removal of Tish, without notice, as guardian of Samantha's person and the estate of Samantha, we conclude that Tish met her burden to show that the trial court committed substantial error in entering the removal order.  *See Woods*, 501 S.W.3d at 151 (party seeking statutory bill of review only needs to show "substantial error" in challenged order or judgment).

27

As to Tish's request that the removal order reflect her resignation as guardian of Samantha's person and the estate of Samantha, the Bank argues that Tish's unconditional resignation as guardian at the hearing on the Bank's first amended application to remove Tish as guardian of Samantha's person and motion to terminate the guardianship of the estate of Samantha was not valid because it was announced by her trial counsel and because she did not file a written application to resign as required by Texas Estates Code section 1203.001. *See* TEX. EST. CODE ANN. § 1203.001 ("Resignation Application").

We first note that the announcement of Tish's unconditional resignation in open court, followed by the Bank's acceptance of that resignation, created a valid agreement between Tish and the Bank under Texas Rule of Civil Procedure 11. *See* TEX. R. CIV. P. 11 (agreement is enforceable if it is "in writing, signed and filed with the papers as part of the record" or "made in open court and entered of record"); *see, e.g.*, *Am. Fisheries, Inc. v. Nat'l Honey, Inc.*, 585 S.W.3d 491, 501–02 (Tex. App.— Houston [1st Dist.] 2018, pet. denied) (parties' agreement to settle case is enforceable if made in open court and entered of record). And under these circumstances, a resignation announcement by Tish's trial counsel was as valid as one made by Tish. *See Gavenda v. Strata Energy, Inc.*, 705 S.W.2d 690, 693 (Tex. 1986) (declaring "[t]he attorney-client relationship is an agency relationship" and attorney's "acts and omissions within the scope of his or her employment are

28

regarded as the client's acts"); *see also Wakefield v. Ayers*, No. 01-14-00648-CV, 2016 WL 4536454, *4 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (mem. op.) ("[A]n attorney may execute an enforceable settlement agreement on his client's behalf; and, under such circumstances, a client's personal signature is not required.").

However, the Bank is correct that the trial court was not required to accept Tish's resignation as guardian of Samantha's person and the estate of Samantha. But the record indicates that the trial court did not oppose it. The trial court stated, "All right, very good" after the Bank agreed to Tish's unconditional resignation, and it turned immediately to the task of selecting a successor guardian for Samantha without hearing any evidence on the grounds for Tish's removal as guardian that had been urged by the Bank. Although the Bank complains that Tish did not file a written application to resign as guardian of Samantha's person and the estate of Samantha, as contemplated by Texas Estates Code section 1203.001, neither the Bank nor the trial court mentioned the need for an application and the trial court described the orders that it wanted Tish to prepare to effect Tish's resignation as guardian of Samantha's person and the estate of Samantha and discharge. Given that the Bank agreed to Tish's resignation in open court and the trial court voiced its approval and

directed Tish to prepare a proposed order for her resignation, an application to resign was unnecessary.[16]

The trial court also stated it would need an order to "remove." But the statute provides for either resignation or removal of a guardian, not both. *Compare* TEX. EST. CODE ANN. §§ 1203.001–.002 (addressing resignation of guardian), *with id.* §§ 1203.051–.052 (addressing removal of guardian). Earlier in the hearing, the trial court told Tish's trial counsel, "[E]ither you decide to . . . have your client resign, or we're going to have testimony regarding the removal." This statement demonstrates the trial court's understanding, consistent with the statute, that resignation and removal were alternatives.

In asking first for a resignation order, the trial court indicated its agreement with that disposition. So, in asking next for an order to "remove," after having declined to take any evidence on that issue, the trial court appears to have meant that it would need an order to discharge Tish as guardian.[17] *See id.* § 1203.006

---

[16] Tish was still required to file the annual report required by Texas Estates Code section 1203.001 before she could be discharged. *See id.* §§ 1203.001, 1203.002(b); *see also id.* §§ 1163.001–.052.

[17] We also note that the Texas Estates Code section 1203.102 uses "removed" alone as shorthand for "resigned, removed, or died." *Compare id.* § 1203.102(a) (allowing court to appoint successor guardian "[i]f a guardian resigns, is removed, or dies"), *with id.* § 1203.102(b) ("The court may appoint a successor guardian under this section without citation or notice if the court finds that a necessity exists for the immediate appointment. Subject to an order of the court, a successor guardian has the powers and rights of the *removed* guardian." (emphasis added)).

(requirements for discharge of guardian applying to resign); *see also id.* § 1203.002(b) (addressing discharge of person resigning as guardian). We conclude that the trial court's removal order should reflect Tish's resignation as guardian of Samantha's person and the estate of Samantha.

Based on the foregoing, we hold that the trial court erred in denying Tish's bill of review.

We sustain a portion of Tish's first issue and her second issue.

**Conclusion**

We dismiss for lack of jurisdiction the portion of Tish's appeal seeking to directly challenge the trial court's October 20, 2020 removal order. We reverse the trial court's order denying Tish's bill of review and render judgment granting the bill of review. We remand the case to the trial court to issue a corrected order that removes the following portion of the October 20, 2020 removal order:

> . . . [C]ame on to be considered by the Court on its own motion, the removal of GUADALUPE LUGO A/K/A TISH LUGO, Guardian of the Person and Estate of SAMANTHA LUGO, in the above entitled and numbered estate and it appearing to the Court that the said guardian is no longer suitable to serve as guardian.
>
> It is THEREFORE ORDERED, ADJUDGED AND DECREED that GUADALUPE LUGO A/K/A TISH LUGO is hereby removed as Guardian of the Person and Estate of SAMANTHA LUGO, and the letters heretofore issued to her shall be surrendered and that all such letters be canceled of record whether delivered or not.

31

In place of this language, the trial court's order shall include a statement accepting Tish's resignation as guardian of the person and estate of Samantha, and if all necessary and compliant reports have been filed, any other provision required to effect her discharge. We dismiss all pending motions as moot.

Julie Countiss
Justice

Panel consists of Chief Justice Radack and Justices Countiss and Farris.